**AMERICAN SPRING WIRE CORP., et al., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**and**

**Haggie Limited, Intervenor.**

**Court No. 82–6–00881.**

United States Court of International Trade.

June 10, 1983.

Eugene L. Stewart, Terence P. Stewart, Washington, D.C., Kathleen T. Weaver and Roger Yochelson, New York City, for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Washington, D.C., Director, Commercial Litigation Branch (Francis J. Sailer, Washington, D.C., on the brief), for defendant.

Busby, Rehm & Leonard, Washington, D.C., (Larry E. Klayman, Washington, D.C., on the brief), for intervenor Haggie Limited.

## Opinion and Order

MALETZ, Senior Judge:

Plaintiffs have filed a motion for discovery of confidential information subject to judicial protective order. The documents sought by plaintiffs are verification data compiled by the International Trade Administration of the Department of Commerce in the course of its countervailing duty investigation of prestressed concrete steel wire strand imported from South Africa.

■ The starting point for analysis of the motion for discovery of confidential information is section 516A(b)(2)(B) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(b)(2)(B) (Supp. IV 1980), which provides:

### Confidential or privileged material

The confidential or privileged status accorded to any documents, comments, or information shall be preserved in any action under this section. Notwithstanding the preceding sentence, the court may examine, in camera, the confidential or privileged material, and may disclose such material under such terms and conditions as it may order.

By its terms this provision vests in the court discretion in determining whether to release confidential documents to parties involved in countervailing duty cases. In exercising its discretion, however, the court is guided by the following three considerations: (1) the need of the litigants for data used by the Government in order to respond adequately to subsidy findings, (2) the need of the Government in obtaining confidential information from businesses in future pro-

ceedings, and (3) the need of the foreign manufacturer to protect from disclosure information which, in the hands of a competitor, might injure its relative position in the industry. *See, e.g., Freres v. United States,* 4 CIT ——, 554 F.Supp. 1246, 1248 (1982).

With these considerations in mind the court must then balance "a party's need for the information sought against the public interest in protecting confidential business information, recognized by section 516A(b)(2)(B) and inherent in the administrative authority's ability to effectively perform its investigative duties" under the countervailing duty law. *Nakajima All Co. v. United States,* 2 CIT 170, 174 (1981). Each case must, of course, be considered in light of its particular facts and circumstances in deciding whether confidential business data should be disclosed. *Compare Committee of U.S. Rayon Producers v. United States,* 3 CIT ——, Slip Op. 82–41 (May 27, 1982) (confidential verification exhibits ordered disclosed); *Japan Exlan Co. v. United States,* 1 CIT 286 (1981) (confidential information requested several years old, so that disclosure would not harm competitive position of companies submitting information); *Rhone Poulenc, Inc. v. United States,* 1 CIT 116 (1981) (where information requested related directly to assessment of material injury, disclosure required); *Atlantic Sugar Ltd. v. United States,* 85 Cust.Ct. 128, 129, C.R.D. 80–14 (1980) (disclosure of document ordered where "plaintiffs' need for it goes beyond mere curiosity or a vague groping for clues"); *and Connors Steel Co. v. United States,* 85 Cust.Ct. 112, 113, C.R.D. 80–9 (1980) (in order for litigant "to fully prepare and present its legally authorized challenge to an administrative determination and to do so based on all available relevant material," disclosure ordered) *with Freres v. United States,* 4 CIT ——, 554 F.Supp. 1246 (1982) (since statistical data containing production capacity, customers and techniques not directly relevant to administrative determination, disclosure denied); *Armco, Inc. v. United States,* 1 CIT 131 (1981) (certain sources of supply to be protected from disclosure); *and Connors Steel Co. v. United States,* 85 Cust.Ct. 132, C.R.D. 80–17 (1980) (need for disclosing confidential data to economic expert not shown, disclosure denied).

■ Having examined *in camera* each of the confidential documents in question, the court is of the view that all of the documents requested by plaintiffs should be made available to them, with the exception of the documents described as "Invoices," appearing at pages 1655–1658 of the administrative record. Inasmuch as these latter documents contain customer-related information the court concludes that the need of the intervenor in protecting from disclosure information which, in the hands of plaintiffs, might injure its relative position in the industry outweighs plaintiffs' need for those documents in order to respond adequately to the Government's subsidy findings. The court believes that these documents are not directly relevant to the administrative determinations. In any event, they would be of marginal assistance to plaintiffs in responding to the Government's countervailing duty determination.

As for the balance of the documents sought by plaintiffs, the court is unable to see how plaintiffs would be able to meaningfully challenge the Government's findings in this action without them. Plaintiffs' need for such documents in the circumstances of this case clearly outweighs the competing considerations of guarding confidential business information so as not to impair the Government's ability to compile such data in future cases and to protect the competitive position of the foreign manufacturer which furnished the data in the first place.

Intervenor contends that plaintiffs have failed to particularize their need for the verification data and that, for that reason, disclosure should be denied. However, this contention was rejected in the *Atlantic Sugar* decision, where the court stated:

At this preparatory stage, to require plaintiffs to make an exact demonstration of how the contents of this document will support their attack on the administrative determination would, in effect, require the court to make an advance judg-

ment of the existence of substantial evidence for those determinations. Aside from demanding impossible prescience from the plaintiffs such an inquiry would result in a distorted and piecemeal judicial review.

*Id.*, 85 Cust.Ct. at 129.

Accordingly, upon reading and filing plaintiffs' motion for discovery of confidential information subject to judicial protective order, and defendant's and intervenor's responses thereto; and

Upon considering the nature of the confidential exhibits and balancing plaintiffs' need for these exhibits against the public interest in protecting confidential information in order not to impair the ability of the administrative agency to collect confidential verification data of this type in the future; and

Having concluded that plaintiffs' need for certain of the confidential exhibits in question outweighs the need in the public interest for withholding disclosure of these exhibits;

It is therefore ORDERED:

1. That plaintiffs' motion for discovery of confidential information subject to judicial protective order is granted to the extent indicated herein and denied in all other respects; and

2. That a true, accurate and complete copy of the following confidential exhibits in the administrative record, together with English translations, shall be made available to plaintiffs by defendant within ten (10) days of the entry of this order under the terms of a protective order mutually agreeable to the parties:[1]

Administrative Record

| | Page | Description |
|---|---|---|
| a. | 738–757 | Questionnaire Response |
| b. | 1628–1636 | Verification Report and Exhibits |

| | Page | Description |
|---|---|---|
| c. | 1637–1648 | Calculations |
| d. | 1683–1701 | Export Incentives Category A or B Documents |
| e. | 1709–1716 | Documents accompanying Finance Charges Aid Scheme Description |
| f. | 1912 | Commerce Rod Price Calculation |
| g. | 1913[2] | Letter from Haggie to Busby regarding rod purchases from ISCOR |
| h. | 1914[3] | Chart of average cost of rod purchased during 1981 |
| i. | 1915–2586 | ISCOR's Rod Invoices to Haggie Rand |
| j. | 2586a–2593 | Invoices for rod from ISCOR for the month of May to Haggie's Germiston factory |
| k. | 2594 | A list of Haggie's monthly 1981 purchases of rod from ISCOR |
| l. | 2595–2715 | A computer printout of Haggie's rod purchases |
| m. | 2716 | Rod prices breakdown per ton |
| n. | 2717–2717a | ISCOR's price list for rod |
| o. | 2718–2722 | ISCOR's rod invoices to Haggie |

---

1. From a review of these documents the item described in plaintiffs' motion as "Exhibits to Questionnaire Response" at pages 758–1541 of the administrative record appears to be part of the public record.

2. This document is mispaginated in the third amended index. The correct page number is "1914".

3. This document is mispaginated in the third amended index. The correct page number is "1915".