**JERNBERG FORGINGS CO., et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Court No. 84–1–00150.**

United States Court of International Trade.

Nov. 19, 1984.

Dow, Lohnes & Albertson, William Silverman, James M. McElfish, Jr., and John C. Jost, Washington, D.C., for plaintiffs.

Howrey & Simon, David C. Murchison, John F. Bruce, and Kevin P. O'Rourke, Washington, D.C., for defendant-intervenor.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C., J. Kevin Horgan, Civ. Div., U.S. Dept. of Justice, New York City, for defendant.

RESTANI, Judge.

Plaintiffs have moved for disclosure of six business-confidential documents, or groups of documents, from the administrative record in this case. Plaintiffs' action challenges two negative aspects of a final affirmative countervailing duty determination concerning certain Italian steel products manufactured by Industria Meccanica e Stampaggio, S.p.A. (I.M.E.S.). Defendant-intervenor I.M.E.S. argues against disclosure. Defendant United States makes no objection to plaintiffs' motion.

■ Section 516A(b)(2)(B) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(b)(2)(B) (1982)[1] vests discretion in this court to determine "whether to release confidential documents to parties involved in countervailing duty cases." *American Spring Wire Corp. v. United States*, 5 CIT ——, 566 F.Supp. 1538, 1539 (1983). In exercising its discretion the court is guided by three considerations: (1) a litigant's need for the data used by the Government to respond adequately to the Government's subsidy findings, (2) the Government's need to obtain confidential information from businesses in future proceedings, and (3) the foreign manufacturer's need to protect from disclosure information which, in the hands of a competitor, might injure its relative position in the industry. *Id.*, 566 F.Supp. at 1539–40, *citing Freres v. United States*, 4 CIT 239, 241–42, 554 F.Supp. 1246, 1248 (1982). *See also Star-Kist Foods, Inc. v. United States*, Slip Op. 84–108 at 3 (October 24, 1983). The court has made an *in camera* examination of the documents in question and will balance plaintiffs' need for the information against " 'the public interest in protecting confidential business information, recognized by section 516A(b)(2)(B) and inherent in the administrative authority's ability to effectively perform its investigative duties' under the countervailing duty law." *American Spring Wire Corp.*, 566 F.Supp. at 1540, *quoting Nakajima All Co. v. United States*, 2 CIT 170, 174 (1981).

■ Plaintiffs first seek access to Document No. 50, a computer print-out of calculations made in the course of The United States Department of Commerce's ("Commerce") preliminary determination. The calculations were based on data supplied by I.M.E.S. and already in plaintiffs' possession. Plaintiffs assert a need to see the method according to which the data was organized. I.M.E.S. argues that the information is irrelevant to plaintiffs' case because it concerns a preliminary finding and not a final determination. Here, however, the aspects of the final determination being challenged are referenced in the preliminary findings. Furthermore, since Document 50 involves confidential information which is no longer secret as to plaintiff, its disclosure to plaintiff cannot injure I.M.E.S. Therefore, the document's possible minimal relevancy is no bar to disclosure under the terms of the strict protective order applicable to this action.

■ Plaintiffs next seek disclosure of certain exhibits[2] to the verification report prepared by Commerce in connection with its investigation. Verification exhibits may properly be disclosed. *Star-Kist Foods, Inc. v. United States*, —— CIT ——, Slip Op. 84–108 at 4; *American Spring Wire Corp.*, 566 F.Supp. at 1540; *Committee of U.S. Rayon Producers v. United States*, 3 CIT 177 (1982). To obtain disclosure of verification exhibits a party is not required to express a particularized need for the data. *American Spring Wire Corp.*, 566 F.Supp. at 1540–41, *quoting Atlantic Sugar Ltd. v. United States*, 85 Cust.Ct. 128, 129 (1980). Nonetheless, the scope of disclosure of confidential data, as in a discovery proceeding, is not boundless.[3] Only material that is relevant to the claims at issue in a case will be released. *See Katunich v. Donovan*, —— CIT ——, 576 F.Supp. 636, 638 (1983). In discovery, however, the concept of relevance is very broad. *Heath-*

1. 19 U.S.C. § 1516a(b)(2)(B) provides:
   The confidential or privileged status accorded to any documents, comments, or information shall be preserved in any action under this section. Notwithstanding the preceding sentence, the court may examine, in camera, the confidential or privileged material, and may disclose such material under such terms and conditions as it may order.

2. When plaintiffs first filed this motion, they sought disclosure of all verification exhibits relating to the findings regarding each "subsidy" program. Later, plaintiffs filed a reply to I.M.E.S.'s relevancy objections. In their reply plaintiffs greatly narrowed the scope of their request for disclosure.

3. Although disclosure of the administrative record is technically not discovery, disclosure of the administrative record and discovery serve the same purpose. Both are designed to allow a plaintiff to adequately develop and prosecute its case.

man v. United States Dist. Ct. for Cent. Dist. of Cal., 503 F.2d 1032, 1035 (9th Cir.1974); Dunn v. Midwestern Indemnity, 88 F.R.D. 191, 195 (S.D.Ohio 1980) (both cases discussing relevancy as required by Fed.R.Civ.P. 26(b)).

Although plaintiffs must demonstrate more than "mere curiosity or a vague groping for clues," Atlantic Sugar Ltd., 85 Cust.Ct. at 129, the threshold of relevancy in this situation, as in ordinary discovery, is not high. As this court's predecessor explained:

> At this preparatory stage, to require plaintiffs to make an exact demonstration of how the contents of [a] document will support their attack on the administrative determinations would, in effect, require the court to make an advance judgment of the existence of substantial evidence for those determinations. Aside from demanding impossible prescience from the plaintiffs such an inquiry would result in a distorted and piecemeal judicial review.

Id.

■ The first series of exhibits that plaintiffs seek is the "A" series labeled "Statistics." These documents consist of tables of customs classifications, Commerce's monthly, yearly, and summarized calculations concerning the subject products, I.M.E.S. invoices, and a general information booklet. Plaintiffs assert that Commerce relied on the Series A data in determining that none of I.M.E.S.'s exports to the United States benefited from preferential export financing. The calculations, customs tables, and general information booklet (exhibits A–1—A–11) do not contain customer names, trade secrets or other information that could damage I.M.E.S.'s competitive position and therefore will be disclosed. The invoices do contain customer names and other confidential information. Disclosure of customer identity and pricing information could be quite damaging to I.M.E.S.'s market position and thus balances heavily against plaintiffs' need for the documents in order to present a case. American Spring Wire, Corp., 566

F.Supp. at 1540. Plaintiffs, however, allege that Commerce used the pricing information in part to verify the negative determination regarding preferential export credit financing which plaintiffs challenge in this action. Without the pricing information, the documents would merely be lists of products. Plaintiff would not be able to attempt to relate the prices of I.M.E.S. exported products to the challenged program. Thus, the documents will be disclosed with the pricing information included. All customer names and addresses except the identity of the customer's country, however, will be redacted.

■ Plaintiffs seek two verification exhibits from the report on rebate of indirect taxes. These documents, I.M.E.S.'s financial statements (exhibits B–6 and B–7), appear to concern I.M.E.S.'s overall financial position. The documents contain information regarding the role of exports in I.M.E.S. operations and thus are relevant to plaintiffs' action. The documents appear to contain much confidential business information. Nonetheless, plaintiffs' need for these documents seems to be great. Exhibit B–6, however, contains a section labeled "clienti" (clients). Disclosure of that section could damage I.M.E.S.'s market position, and does not appear to be vital to plaintiffs' case. Therefore, that section will be redacted. Exhibits B–6 and B–7 will then be disclosed.

■ Plaintiffs also seek two documents from the report on preferential financing. Exhibit C–14 is a book on the Italian banking system. The exhibit appears to be a public document. It contains no confidential information which could damage I.M.E.S. or discourage future disclosure. It will therefore be disclosed.

Exhibit C–15 from the preferential financing report is an Italian document concerning short-term financing. The document contains no customer names or other secret information. Although plaintiffs have not demonstrated its relevancy, it appears that the document may be relevant and no harm will stem from its disclosure. Thus, it will be disclosed.

■ The final verification exhibits that plaintiffs seek are those supporting the findings on the two challenged programs. Exhibits D–1—D–23 specifically address the steel pricing scheme. Although these documents contain certain customer names and other possibly confidential information, the documents must be disclosed to allow plaintiffs to prosecute their claim. "[T]he court is unable to see how plaintiffs would be able to meaningfully challenge the Government's findings in this action without them." *American Spring Wire Corp.*, 566 F.Supp. at 1540. The same rationale applies to the series of exhibits relating to export credit financing (exhibits F–1—F–21). Those exhibits were used by Commerce to support its determinations and therefore must be disclosed. In both sets of exhibits, however, customer names will be redacted.

■ Plaintiffs also seek disclosure of two internal memoranda which I.M.E.S. has never seen. The first document, No. 124, is an issue paper on export credit financing. This document directly relates to plaintiffs' action and will be disclosed.[4]

The second memorandum, Document No. 125, is an issue paper on the rebate of indirect taxes. The determination concerning this program has not been challenged. Plaintiffs, however, argue that the memorandum is needed to determine whether Commerce analyzed the two challenged negative aspects in a manner consistent with the analysis of the indirect tax rebate issue. Although this document may be only minimally relevant to plaintiffs' claims, it does not appear to contain sensitive information which could injure I.M.E.S. if disclosed. Document No. 125 will therefore be released.

■ Plaintiffs' final requests involve two letters written by I.M.E.S.'s counsel to Commerce. Plaintiffs assert that they need the first document, No. 132, which deals with I.M.E.S.'s purchase of steel from two mills, in order to challenge Commerce's use of the "best information available" in making its final determination. This information would also be necessary for plaintiffs to meaningfully challenge the government's findings. *See American Spring Wire Corp.*, 566 F.Supp. at 1540. Thus, Document No. 132 will be disclosed after the customer names have been redacted.

The second letter, Document No. 133A contains I.M.E.S.'s comments on plaintiffs' letters to Commerce concerning steel prices. The letter itself notes that I.M.E.S. had possession of the confidential versions of plaintiffs' letters. Fairness dictates that plaintiffs be allowed to obtain the confidential version of I.M.E.S.'s reply to plaintiffs' arguments.[5]

The protective order previously entered in this matter, as modified herein, shall be applicable to the documents covered by this opinion. Commerce shall redact the confidential information as directed herein before disclosure of the documents.

If after this confidential information is redacted pursuant to this order, plaintiffs are unable to decipher the documents so as to proceed with their case, the court will entertain a motion for further disclosure.

It is therefore **ORDERED:**

1. That plaintiffs' motion for discovery of confidential information subject to judicial protective order is granted to the extent indicated herein; and

---

**4.** Defendant-intervenor urges that it should be allowed to inspect Document No. 124 before it is revealed to plaintiffs in order to allow I.M.E.S. to see if the document contains confidential material not previously exposed to plaintiffs. Because neither party has yet seen the document, early disclosure to defendant-intervenor only would give one party an advantage over another. In any case, the court is assuming that this document contains confidential information.

**5.** Plaintiffs also argue for disclosure on the ground that Documents 132 and 133A were not part of the original administrative record only because I.M.E.S. filed the letters thirteen days before the final determination. It is also unclear whether I.M.E.S. contests the relevancy of Documents 132 and 133A. In any event, the documents will be disclosed.

2. That a true, accurate and complete (except for the ordered redactions) copy of the following confidential exhibits in the administrative record, together with English translations, shall be made available to plaintiffs by defendant within ten (10) days of the date of this order pursuant to the protective order previously stipulated to by the parties:

| Document Number | Description |
| --- | --- |
| 50 | Computerized data used in the preliminary determination. |
| Exhibits to 110: Nos. A–1—A–16, B–6, B–7, C–14 D–1—D–23 and F–1—F–21 | Verification exhibits. |
| 124 | Commerce issue paper on export credit financing. |
| 125 | Commerce issue paper on rebate of indirect taxes. |
| 132 | Letter from Howrey & Simon to Commerce regarding steel purchased by I.M.E.S. |
| 133A | Letter from Howrey & Simon commenting on Dow, Lohnes & Albertson letters to Commerce of 9/30/83 and 10/7/83 concerning steel pricing. |