CHEVRON U.S.A., INC., CITIES SERVICE OIL AND GAS CORP., AND PHILLIPS PETROLEUM CO., PLAINTIFFS AND EXXON CORP. PLAINTIFF-INTERVENOR v. UNITED STATES AND U.S. INTERNATIONAL TRADE COMMISSION, DEFENDANTS AND KAISER STEEL CORP. AND INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, DEFENDANT-INTERVENORS

Court Nos. 86–06–00788 and 86–06–00789

(Decided February 6, 1987)

*Pillsbury, Madison & Sutro (Donald E. deKieffer, Francis J. Sailer* and *Frank J. Schuchat)* for plaintiff Chevron U.S.A., Inc.

*Arnold & Porter (Patrick F.J. Macrory* and *M. Howard Morse)* for plaintiff Cities Service Oil and Gas Corporation in Court No. 86–06–00789.

*Busby, Rehm and Leonard, P.C. (Will E. Leonard* and *Edward R. Easton)* for plaintiff Phillips Petroleum Company.

*Covington & Burling (Harvey M. Applebaum* and *David R. Grace)* for plaintiff-intervenor Exxon Corporation.

*Richard K. Willard,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, Department of Justice *(Platte B. Moring, III)* for defendants.

*Collier, Shannon, Rill & Scott (David A. Hartquist* and *Kathleen Weaver Cannon)* for defendant-intervenors Kaiser Steel Corporation and International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers.

*Cahill, Gordon & Reindel (Donald J. Mulvihill* and *Marshall Silverberg)* for applicant McDermott, Inc.

OPINION & ORDER

TSOUCALAS, *Judge:* These actions are before the Court on motion of McDermott, Inc. (McDermott) to intervene for the limited purpose of contesting the release of business information submitted to the International Trade Commission (ITC) in connection with investigations of allegedly subsidized and less than fair value imports of jackets and piles from Korea and Japan for use in offshore oil and gas drilling platforms.

BACKGROUND

Plaintiffs, importers of the merchandise which was the subject of investigation, instituted these actions to contest antidumping and countervailing duty orders, as well as the related administrative determinations, covering imports of offshore platform jackets and piles from Korea and Japan. 51 Fed. Reg. 18,641–44 (1986).

McDermott chose not to become a party to the administrative proceedings in these investigations, at least in part, in order to prevent the disclosure of sensitive business information. McDermott represents to the Court that it completed the ITC's questionnaire after the agency threatened to employ its subpoena power to obtain the requested data. In an attempt to assuage the movant's concerns about possible disclosure of its questionnaire, the ITC agreed to inform McDermott of requests for access to the information, and to "preserve the confidentiality of the information except as required by law." *Motion to Intervene by McDermott, Inc. for the Limited Purpose of Opposing the Plaintiffs' Joint Motion for Access to Confidential Information Under Protective Order* at 5 (hereinafter "Motion to Intervene").

McDermott now seeks to intervene in this action solely for the purpose of opposing plaintiffs' request for access to its business data under the terms of a judicial protective order. Defendants have taken no position with regard to either the motion to intervene or the request to review the contents of the confidential administrative record.

DISCUSSION OF LAW

1. *The Motion to Intervene*

The parties contend that intervention is governed in the instant situation by USCIT R. 24(a)(2)[1]

> (a) Intervention of Right.
> Upon timely application anyone shall be permitted to intervene in an action: * * * or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Plaintiffs oppose the motion to intervene on the grounds that McDermott has eschewed any interest in the property or transaction which is the subject of the action by failing to participate in the administrative proceedings. Further, plaintiffs contend that McDermott can be fully protected against improper disclosure of its busi-

---

[1]:McDermott explains, *Motion to Intervene* at 7, that it was not a party to the proceeding and therefore does not seek to intervene pursuant to Rule 24(a)(1). *See* 28 U.S.C. § 2631(j)(1)(B) (1982) (in action brought under 19 U.S.C. § 1516a, only an interested party who was party to the proceeding may intervene, and such intervention is of right) *See also Matsushita Elec. Indus. Co v. United States,* 2 CIT 254, 255 & n.2, 529 F. Supp. 664, 666 & n.2 (1981) (intervention in antidumping action strictly controlled by statute).

ness information through the commonly used device of a protective order. *Plaintiffs' Opposition to Motion to Invervene* at 3–4.

The data contained in the questionnaire submitted by McDermott concerns sensitive matters such as:

> production quantities, inventories, quantities and values of sales, annual production capacities, distribution of net sales, profit and loss and other financial data, capital expenditures, various employment-related information (including wages), and domestic prices.

*Motion to Intervene* at 4. Particularly in view of the government's failure to take a position on the issues under consideration, the Court believes that McDermott's participation, pursuant to USCIT R, 76, as *amicus curiae* would be beneficial in determining whether to allow the parties access to the entire contents of the confidential administrative record.[2] *See Roquette Freres* v. *United States,* 4 CIT 239, *order amended,* 4 CIT 257, 554 F. Supp. 1246 (1982) (nonparty submitter participated as *amicus curiae* to oppose release of its business data).[3]

## 2. *Release of the Confidential Information*

The revelant statute gives a court wide latitude in deciding whether to release confidential information:

> **(B) Confidential or privileged material.**—The confidential or privileged status accorded to any documents, comments, or information shall be preserved in any action under this section. Notwithstanding the preceding sentence, the court may examine, in camera, the confidential or privileged material, and may disclose such material under such terms and conditions as it may order.

19 U.S.C. § 1516a(b)(2)(B) (1982). *See also* USCIT R. 26(c)(7) (allowing the court to order that "commercial information not be disclosed or be disclosed only in a designated way").

In deciding whether to release confidential information pursuant to protective order, a court will balance the "need for the materials sought against the potential harm that would result from their disclosure." *Roses, Inc.* v. *United States,* 1 CIT 116, 117 (1981); *Jernberg Forgings Co.* v. *United States,* 8 CIT 275, 276, 598 F. Supp. 390, 392 (1984); *Katunich* v. *Donovan,* 6 CIT 226, 227, 576 F. Supp. 636, 638

---

[2]That movant urges denial of part of plaintiffs' discovery request, while defendants take no position on the matter, should present no bar to this Court's consideration of McDermott's brief. In the words of one court, "[i]n the abstract, the Court sees no limitation to the issues on which a brief by *amicus curiae* may be found useful. Nor is it an objection that *amicus* has an adversarial objective." *Stewart-Warner Corp.* v. *United States,* 4 CIT 141, 142 (1982).

[3]As explained previously, McDermott has moved to intervene in this action solely to oppose release of its confidential business information, and it disclaims any other interest in the litigation. The court is mindful that pursuant to Fed. R. Civ. P. 24(a)(2), which is identical to USCIT R. 24(a)(2), limited intervention has been permitted for the purpose of contesting a discovery request. *See United States* v. *AT&T Co.,* 642 F.2d 1285, 1295 (D.C. Cir. 1980) (third party claim of work product privilege in documents sought qualifies as interest relating to the subject of the action); *but cf. Donaldson* v. *United States,* 400 U.S. 517, 531 (1971) (taxpayer does not have a protectable interest in tax records compiled by employer that would justify intervention in IRS summons enforcement proceeding). Given that *amicus* status allows movant to accomplish what it has sought by virtue of its motion—an opportunity to present its views on access to the confidential record—the Court need not reach the question as to whether the criteria for intervention have been established.

(1983); *Nakajima All Co.* v. *United States,* 2 CIT 170, 174 (1981); *Connors Steel Co.* v. *United States,* 85 Cust. Ct. 112, 113, C.R.D. 80–9, *modification denied,* 85 Cust. Ct. 132, C.R.D. 80–17 (1980). The specific considerations that underlie this balancing test have been detailed as follows:

> (1) the needs of the litigants for data used by the Government in order to adequately respond to the antidumping finding, (2) the need of the Government in obtaining confidential information from businesses in future proceedings, and (3) the needs of the producers of [the subject merchandise] to protect from disclosure information which, in the hands of a competitor, might injure their respective positions to the industry.

*Roquette Freres,* 4 CIT at 240–41, 554 F. Supp. at 1248; *American Spring Wire Corp.* v. *United States,* 5 CIT 256, 257, 566 F. Supp. 1538, 1539–40 (1983).

As other courts have recognized, improper disclosure, albeit inadvertently, of confidential business information can be highly damaging to a business. *See, e.g., Nakajima All Co.,* 29 CIT at 173 ("Clearly, disclosure * * * may cause incalculable harm."). The Court must also consider the potential effect on other persons if McDermott's information is released. Arguably, such disclosure might dampen the willingness of other corporations to provide information in future investigations. Although the United States takes no position with regard to the motion at issue, in the past, it has emphasized the importance of voluntary compliance with requests for information in antidumping and countervailing duty investigations. *See Roses, Inc.* v. *United States,* 9 CIT 28, Slip Op. 85–7 at 2 (1985); *Japan Exlan Co.* v. *United States,* 1 CIT 286 (1981). Despite the ITC's subpoena power, 19 U.S.C. § 1333 (1982); 19 C.F.R. § 207.8 (1986), it relies upon the cooperation of respondents to its queries for information in order to comply with the statutory deadlines for completion of its determinations. *See Atlantic Sugar, Ltd.* v. *United States,* 744 F.2d 1556, 1560 (Fed. Cir. 1984) (emphasizing time restraints limiting practical utility of ITC's subpoena power).

It is clear that a court has the authority to "deny access to all where the specific facts indicate a probability that confidentiality, under any form of protective order, would be seriously at risk." *United States Steel Corp.* v. *United States,* 730 F.2d 1465, 1469 (Fed. Cir. 1984), *vacating,* 6 CIT 55, 569 F. Supp. 870, *reh'g denied,* 6 CIT 176, *opinion amended,* 6 CIT 238, 578 F. Supp. 415 (1983). Notwithstanding that authority, release of the data under protective order to counsel, as officers of the court, is generally considered sufficient to address the foregoing concerns.[4] *See also Katunich,* 6 CIT at 229 (relevant confidential data released to *pro se* litigants under protec-

---

[4]This is so despite the fact that use of a protective order can never be an absolute guarantee against improper disclosure and therefore may not totally allay the fears of those who submit information to the investigatory authorities. The Court hastens to add that, in the instant case, there is absolutely no reason to question counsel's ability to comply with the terms of a protective order.

tive order). In other words, courts that have considered the matter have generally resolved the requisite balancing in favor of disclosure, providing the relevance of the data to the litigated issues is suitably established. In so deciding, these courts have recognized, explicitly or implicitly, the importance of judicial review of the claims raised in light of all germane evidence existing on the record. *See, e.g., United States Steel Corp.,* 730 F.2d at 1467 (failure to disclose relevant confidential data would render adversarial proceedings impossible); *Committee of United States Rayon Producers* v. *United States,* 3 CIT 177, 177–78 (1982) ("plaintiff's need for the confidential verification exhibits * * * outweighs the need in the public interest for precluding disclosure * * *.").

In the instant case, an additional factor must be considered; namely, the desire of a nonparty to the administrative proceedings, such as McDermott, to prevent release of data which "comprises the most highly sensitive and confidential information possessed by the company. It is produced for internal use only and is never disclosed outside the company." *Motion to Intervene,* Exhibit A, Lynott Affidavit at 2, ¶5. McDermott has demonstrated an unwavering reluctance to disclose its data. It chose neither to join in the filing of the petitions initiating the administrative reviews, nor to become a party to the proceedings, and disclaims any interest in the substance of the litigation. Movant apparently would urge this Court to treat this factor as decisively tipping the balance in favor of nondisclosure of the data.

There is a dearth of cases specifically treating the issue of release of nonparty business data. In *Roquette Freres,* a decision relied upon by movant, the court refused to release the confidential data of a nonparty.[5] That court, although noting the "vital" nature of the information sought, ostensibly based its holding on the fact that "[m]uch of this data was not directly relevant to the administrative determinations * * *. The industry-wide aggregate data, and not the individual producer statistics, form the basis of the administrative determinations * * *." *Roquette Freres,* 4 CIT at 241–42, 554 F. Supp. at 1248. Thus, the presence of a nonparty contesting release of its data did not cause the court to dispense with a consideration of plaintiff's need for the information. Accordingly, this Court will assess the relevancy of the subject data to the claim raised in this litigation.

The need for the data does not have to be "compelling," *Japan Exlan Co.,* 1 CIT at 287, nor must plaintiffs demonstrate "impossible prescience" by explaining exactly how McDermott's data will support the attack on the administrative determination. *See Atlan-*

---

[5]In *Atlantic Sugar, Ltd* v. *United States,* 85 Cust. Ct. 114, C R D. 80–10, *modification and stay denied,* 85 Cust. Ct. 128, C.R.D. 80–14 (1980), the court denied a motion by an intervenor to stay disclosure of documents pending notification and comment by all persons whose confidential information would be released subject to protective order. It was noted that under the law then in effect, there was no requirement that such persons be notified of the litigation. *Atlantic Sugar,* 85 Cust Ct. at 128. More significantly, it opined "that possible harm to other persons by unauthorized disclosure will, in any event, be minimized by the adoption of a stringent protective order." *Id.* at 129.

*tic Sugar,* 85 Cust. Ct. at 129. It has been noted that the threshold of relevancy for the purpose of disclosing the contents of the administrative record, like that in civil discovery, is not high. *Jernberg Forgings,* 8 CIT at 277, 598 F. Supp. at 392. At the same time, the plaintiffs must establish that their need for the data goes beyond "mere curiosity or a vague groping for clues." *Atlantic Sugar,* 85 Cust. Ct. at 129.

Plaintiffs contend, *inter alia,* that the ITC, in its material injury investigation, failed to adequately consider each instance in which a contract was awarded to a contractor who was not part of the domestic industry. Additionally, plaintiffs claim that the difference between the low domestic bid and the winning bids by Korean producers was in all cases substantially greater than any antidumping margin or subsidy amount calculated by the International Trade Administration (ITA), and that if the sole criterion for the award of contracts was fair value or unsubsidized bids, no domestic bidder would have been awarded any of the contracts relevant to the ITC's investigations. *Plaintiffs' Complaint in Court No. 86–06–00788* at 4, 5–6; *Plaintiffs' Complaint in Court No. at 86–06–00789* at 5, 7.

The Court, after reviewing the pertinent portions of the confidential administrative record, concludes that even a minimal showing of need for McDermott's financial data has not been made. Plaintiffs plan to demonstrate the non-responsiveness of domestic producer bids, principally due to alleged deficiencies in West Coast assembly sites. Plaintiffs also plan to demonstrate that foreign bids, even with the subsidy amount or dumping margin added, would be lower than domestic bids on a given offshore platform product. It appears that the bid data useful for this purpose is in the possession of jacket and pile purchasers who solicited these bids or may be obtained from reports prepared for use by the ITC. No attempt has been made to show how disclosure of McDermott's intimate financial details would further plaintiffs' case. Since it does not appear that McDermott's questionnaire is needed for plaintiffs' challenge to the administrative findings, the Court must conclude that the interest in continued confidentiality of the data is predominant.

CONCLUSION

McDermott is granted *amicus curiae* status to present its opposition to release, subject to protective order, of the entire contents of the confidential administrative record. The Court concludes, after balancing all relevant considerations, that disclosure of McDermott's "producer's questionnaire" is not warranted, at this time, since it has not been shown to be relevant to the claims raised. In so concluding, the Court does not foreclose the possibility that it may reconsider the applicable factors upon a showing of need for the subject materials.

Within fifteen (15) days from the date of this order, plaintiffs' and defendants' counsel are to submit jointly a proposed protective order, pursuant to which, the contents of the confidential administrative record in the captioned cases, with the exception of the producer's questionnaire completed by McDermott, will be disclosed.