A. HIRSH, INC., Plaintiff,

v.

UNITED STATES, Defendant.

Court No. 86–03–00331.

United States Court of
International Trade.

March 27, 1987.

Mandel Resti Pollack & Borakove, James A. Resti and Thomas J. Kovarcik, New York City, and Fell & Spalding, David B. Hirsh, Philadelphia, Pa., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ.Div., U.S. Dept. of Justice (Sheila N. Ziff); U.S. Intern. Trade Com'n, Kristian Anderson; and Office of the Deputy Chief Counsel for Import Admin., U.S. Dept. of Commerce, Polina Smith, Washington, D.C., for defendant.

## OPINION & ORDER

AQUILINO, Judge:

In this action seeking judicial review of an antidumping-duty order, the plaintiff has moved the court for access on the part of its in-house lawyer to the confidential information which comprises the nonpublic portion of the administrative record submitted to or produced by the International Trade Administration, U.S. Department of Commerce ("ITA") and the International Trade Commission ("ITC") in connection with their investigations of natural-bristle

paint brushes from the People's Republic of China.[1]

### Background

In its motion for disclosure [hereinafter "Plaintiff's Motion"], the plaintiff argues essentially that (1) for financial reasons the action cannot be prosecuted without inside counsel's complete involvement in the litigation, which is dependent upon the granting of the access requested; (2) denial of access should not "turn upon the mere categorization of counsel as in-house"[2]; and (3) that lawyer's nonpolicy role within the plaintiff company and his willingness to adhere, in accordance with the standards of the legal profession, to a carefully-drafted protective order obviates any possibility of misuse or inadvertent disclosure of the information.

The defendant objects to authorizing such access to the attorney in question "not simply because he is general counsel and vice president of plaintiff"[3]. Rather, defendant's position is stated as follows:

... [Counsel]'s close family relationship to the competitive decisionmakers in the plaintiff company, begets an unacceptable risk of inadvertent disclosure. That factor, in addition to the appearance of impropriety that may be created by his obtaining access to confidential data concerning competitors of his family's business, requires denial of the motion for disclosure with respect to David B. Hirsh.[4]

Notwithstanding the parties' variant characterizations of the role of the attorney in question, the following facts are seemingly not at issue. David B. Hirsh, Esq. is general counsel and chief legal officer of the plaintiff A. Hirsh, Inc.[5], a corporation that imports the paint brushes subject to the anti-dumping-duty order and that is owned and operated by Mr. Hirsh's father, Erwin Hirsh, who manages the firm along with David's brother. *See* Hirsh Affidavit, para. 5. From February 20, 1981 until July 28, 1986, David Hirsh was empowered by plaintiff's board of directors "to perform the duties and exercise the powers of the presidency in the absence or disability"[6] of his father. Apparently at David Hirsh's request, this power was rescinded by board resolution during his preparation of the motion now under consideration. *See id.,* para 6.

### Discussion

The court already has granted plaintiff's request for disclosure to its retained counsel, James A. Resti, Esq., under protective order pursuant to 19 U.S.C. § 1516a(b)(2)(B). The plaintiff proposes such an order in conjunction with this motion differing only in its inclusion of Mr. Hirsh. However, the court is not persuaded that this relief is necessary or appropriate.

### I

■ The authority to control access to the administrative record is found in the referenced section 1516a(b)(2)(B), which states:

*Confidential or privileged material.* The confidential or privileged status accorded to any documents, comments, or information shall be preserved in any action under this section. Notwithstanding the preceding sentence, the court may examine, in camera, the confidential or privileged material, and may disclose

---

1.  The ITA final determination of sales of natural-bristle paint brushes from the People's Republic at less than fair value appears at 50 Fed.Reg. 52,812 (Dec. 26, 1985). The ITC final determination that those imports threaten a United States industry with material injury is published in 51 Fed.Reg. 4,662 (Feb. 6, 1986).

2.  Plaintiff's Motion, p. 2.

3.  Defendant's Memorandum in Opposition to Plaintiff's Motion for Disclosure of Confidential Documents, Comments or Information to David B. Hirsh [hereinafter cited as "Defendant's Memorandum"], pp. 4–5.

4.  *Id.* at 5.

5.  *See* Affidavit of David B. Hirsh [hereinafter cited as "Hirsh Affidavit"], para. 3; Plaintiff's Motion, p. 2.

6.  Hirsh Affidavit, Exhibit A.

such material under such terms and conditions as it may order.

There is no question that this statute provides the court with broad discretion in controlling access to confidential materials. *See, e.g., U.S. Steel Corporation v. United States*, 730 F.2d 1465, 1467, 1469 (Fed.Cir. 1984); *Chevron U.S.A. v. United States*, Slip Op. 87–13 at 5, 7 (Feb. 6, 1987) [Available on WESTLAW DCTU, database]; *Roquette Freres v. United States*, 4 CIT 239, 240, 554 F.Supp. 1246, 1248 (1982). In exercising its discretion, the court must balance the competing interests of a party's need for the information against the potential harm in disclosing it, guided by the following considerations:

> . . . (1) the needs of the litigants for data used by the Government in order to adequately respond to the [administrative agency] finding, (2) the needs of the Government in obtaining confidential information from businesses in future proceedings, and (3) the needs of the [disclosing parties] to protect from disclosure information which, in the hands of a competitor, might injure their respective positions in the industry.[7]

■ Plaintiff's need for access to all portions of the administrative record is evident from the nature of the judicial review process, as contemplated by 19 U.S.C. 1516a(b), which confines the court's review of this action to that record.[8] To meaningfully challenge agencies' determinations, access to the information used by them is essential and will be granted unless outweighed by " 'the public interest in protecting confidential business information, recognized by section 516A(b)(2)(B) and inherent in [an agency's] ability to effectively perform its investigative duties' under the [antidumping] law." *American Spring Wire Corp. v. United States*, 5 CIT 256, 257, 566 F.Supp. 1538, 1540 (1983), quoting *Nakajima All Co., Ltd. v. United States*, 2 CIT 170, 174 (1980) [Available on WEST-

LAW DCTU database]. That information includes trade secrets, cost of production and distribution, inventories, production capacity, profits and losses, customer lists and other matters, the disclosure of which could cause substantial harm to the disclosing party or to the agency. *See* 19 C.F.R. §§ 201.6, 353.29.

On the other hand, where the court grants access to this data for litigation purposes, "the risk of the competitor's obtaining an unfair business advantage may be substantially increased." *Akzo N.V. v. U.S. International Trade Commission*, 808 F.2d 1471, 1483 (Fed.Cir.1986). Any rights of the injured party which would arise upon either the advertent or the inadvertent use of confidential information in violation of a protective order could not redress the irreparable harm already incurred. *See id.*

To guard against that possibility during the judicial review process, Congress included in the Trade Agreements Act of 1979 ("1979 act") a "[s]pecial provision . . . for preserving the confidential or privileged status of any materials contained in th[e] record". S.Rep. No. 249, 96th Cong., 1st Sess. 248 (1979), U.S. Code Cong. & Admin. News 1979, pp. 381, 634. That provision of the act, 19 U.S.C. § 1516a(b)(2)(B), *supra* page 4, prohibits the release of those portions of the administrative record designated "confidential" unless it is under terms ordered by the court.

Consistent with congressional concern over confidentiality, caution is the necessary approach when ordering disclosure of privileged information to anyone. This policy is reflected in numerous decisions on the issue of access—decisions which reflect concern over the "incalculable harm" caused by unwarranted disclosure. *See, e.g., Chevron U.S.A. v. United States*, Slip Op. 87–13 at 6; *Nakajima All Co., Ltd. v.*

---

7. *Roquette Freres v. United States*, 4 CIT 239, 240, 554 F.Supp. 1246, 1248 (1982). *See, e.g., Jernberg Forgings Co. v. United States*, 8 CIT 275, 276, 598 F.Supp. 390, 392 (1984); *American Spring Wire Corp. v. United States*, 5 CIT 256, 257, 566 F.Supp. 1538, 1539 (1983).

8. Section 1516a(b)(1)(B) provides for review of agency final determinations to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

*United States,* 2 CIT at 173; *Connors Steel Company v. United States,* 85 Cust.Ct. 112, 113 (1980). In *Akzo, supra,* the Court of Appeals for the Federal Circuit implicitly condoned such a policy by indicating its approval of the ITC's "conservative position on the side of optimum shielding of business information." [9] Similarly, in an earlier decision, that court specifically noted the "CIT's well-taken concern for" and "emphasis on protection of confidentiality". *U.S. Steel Corporation v. United States,* 730 F.2d at 1467, *vacating* 6 CIT 55, 569 F.Supp. 870 (1983).

At common law, as well as in other statutes and federal rules, there is also an acknowledged concern with protecting confidential commercial information, notwithstanding generally recognized liberal discovery procedures favoring disclosure. *See Hickman v. Taylor,* 329 U.S. 495, 500–01, 67 S.Ct. 385, 388–89, 91 L.Ed. 451 (1947); *United States v. Procter & Gamble,* 356 U.S. 677, 682–83, 78 S.Ct. 983, 986–87, 2 L.Ed.2d 1077 (1958). Courts have often ordered disclosed sensitive information pursuant to the common law right of access to judicial records, yet have placed limitations on access to those containing "business information that might harm a litigant's competitive standing". *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 598, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978), citing *Schmedding v. May,* 85 Mich. 1, 5–6, 48 N.W. 201, 202 (1891), and *Flexmir, Inc. v. Herman,* 40 A.2d 799, 800 (N.J.Ch.1945). *See also Brown & Wil-liamson Tobacco Corp. v. FTC,* 710 F.2d 1165, 1179 (6th Cir.1983) ("Under the common law, content-based exceptions to the right of access have been developed to protect competing interests.... [T]hese interests include ... trade secrets").

In the discovery context, the "common law tradition" of protecting trade secrets [10] and other confidential commercial information also has been recognized. *See Federal Open Market Committee v. Merrill,* 443 U.S. 340, 356, 99 S.Ct. 2800, 2810, 61 L.Ed.2d 587 (1978), citing *E.I. du Pont de Nemours Powder Co. v. Masland,* 244 U.S. 100, 103, 37 S.Ct. 575, 576, 61 L.Ed. 1016 (1917). This qualified privilege developed so as to "encourage useful discoveries by securing their fruits to those who make them." *Fowle v. Park,* 131 U.S. 88, 97, 9 S.Ct. 658, 662, 33 L.Ed. 67 (1889).

> ... Courts choose to protect this property right and its attendant competitive advantage ... because to disclose the trade secret publicly is said to dedicate it to the world and to destroy the owner's proprietary control and the secret's property value.[11]

The protection accorded by courts is embodied in the Federal Rules of Civil Procedure, which

> provide similar qualified protection for trade secrets and confidential commercial information. ... Federal Rule Civ.Proc. 26(c)(7), which replaced former Rule 30(b) in 1970, was intended in this respect to "reflec[t] existing law." [12]

---

**9.** 808 F.2d at 1483. The pertinent issue in that case was whether the ITC administrative law judge properly excluded in-house counsel from a protective order that granted outside counsel access to "confidential business information" obtained in a section 337 investigation, 19 U.S.C. § 1337. *Compare* 19 C.F.R. § 210.37(a) *with* CIT Rule 26(c). In affirming the decision to deny the in-house attorney access, the court noted with approval the balancing test employed by the ALJ in reaching his conclusion, a test essentially identical to the one employed herein. *Compare* 808 F.2d at 1484 *with supra,* p. 1300.

**10.** *United States v. International Business Machines Corp.,* 67 F.R.D. 40, 45 (S.D.N.Y.1975), wherein the court gave the "generally accepted definition" of "trade secret" as any

"formula, pattern, device, compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it".... It is suggested that a secret be in continuous use in the business and may relate to the production of goods or to the sale of goods.... *Id.* at 46, n. 9, quoting Restatement of Torts, § 757.

As defined, the term is broad enough to refer to the kind of information sought by the plaintiff for disclosure to Mr. Hirsh.

**11.** *United States v. International Business Machines Corp.,* 67 F.R.D. at 46.

**12.** *Federal Open Market Committee v. Merrill,* 443 U.S. 340, 356, 99 S.Ct. 2800, 2810, 61 L.Ed.2d 587 (1978) (citation omitted).

In addition, the protection has been provided for specifically in a number of federal statutes relating to disclosure of commercial data submitted to administrative agencies, *e.g.,* the Freedom of Information Act, 5 U.S.C. § 552(b)(4); and the Federal Trade Commission Act, 15 U.S.C. § 46(f). And as previously referred to, the 1979 act includes a "special provision" to that effect, 19 U.S.C. § 1516a(b)(2)(B).

While concern with potential injury underlies these decisions, statutes and rules, there is another reason for the broad recognition of the protection. Release of such materials to an adversary, whether or not under protective order, can seriously discourage parties from disclosing confidential information in the future, whether required in administrative agency proceedings, as part of a witness's testimony, or for scientific research purposes. *See, e.g., Farnsworth v. Procter & Gamble,* 758 F.2d 1545, 1547 (11th Cir.1985) [13]; *Dow Chemical Co. v. Allen,* 672 F.2d 1262, 1278 (7th Cir.1982); *Nakajima All Co., Ltd. v. United States,* 2 CIT at 174; *Martindell v. Int'l Tel. & Tel. Corp.,* 594 F.2d 291, 295 (2d Cir.1979). *See also National Parks and Conservation Association v. Morton,* 498 F.2d 765, 769 (D.C.Cir.1974) (Exemptions under the F.O.I.A. for certain confidential information serve the goal of "(1) encouraging cooperation by those who are not obliged to provide information to the government and (2) protecting the rights of those who must").

Because submission of confidential information is essential to the administration of the 1979 act, a "chilling effect" on either the ITA's or ITC's ability to gain access to information required to conduct investigations consistently has been a factor in decisions on confidential disclosure. *See, e.g., Jernberg Forgings Co. v. United States,* 8 CIT at 276, 598 F.Supp. at 392 (1984); *Roquette Freres Corp. v. United States,* 4 CIT at 241, 554 F.Supp. at 1248 (1982); *Nakajima All Co., Ltd. v. United States,* 2 CIT at 174. *See also Akzo N.V. v. U.S. International Trade Commission,* 808 F.2d at 1483–84.[14]

■ As is evident from the foregoing, providing a high level of protection for the type of information sought by the plaintiff herein is well-established judicial policy. Nevertheless, where the competing interests favoring disclosure predominate—that is, the need for access outweighs the harm to the disclosing party and the forum's interest in maintaining confidentiality—the court will release that information. Its decision to do so must be based on "the factual circumstances surrounding each individual counsel's activities, association and relationship with a party", regardless of whether counsel is in- or out-side. *U.S. Steel Corporation v. United States,* 730

---

**13.** The Eleventh Circuit noted that disclosing confidential information that had been submitted to a party as part of a medical research study "could seriously damage this voluntary reporting" and inhibit future studies in which such information would be required. 758 F.2d at 1547. Accordingly, the court held that the "district court acted within its discretion in holding that the [party's] interests in keeping its study participants' names confidential outweigh the discovery interests of the [opposing party]." *Id.*

**14.** In that case, the "chilling effect" proved to be a principal factor in the circuit court's decision to uphold the agency's exclusion of appellant's in-house counsel from access to confidential information, to wit:

The primary justification for the Commission's reluctance to grant adversary management and in-house counsel access to confidential information is that, in order to discharge its statutory responsibility within the strict statutory time limits, the Commission is

heavily dependent on the voluntary submission of information. Disclosure of sensitive materials to an adversary would undoubtedly have a chilling effect on the parties' willingness to provide the confidential information essential to the Commission's fact-finding processes. The Commission has resolved the difficult and controversial question of the role of in-house counsel by taking a conservative position on the side of optimum shielding of business information. Obviously, where confidential material is disclosed to an employee of a competitor, the risk of the competitor's obtaining an unfair business advantage may be substantially increased. . This general Commission position is neither unreasonable nor arbitrary. It represents an appropriate balancing between the needs demanded by the Commission's process and the parties' need for participation by its in-house personnel. 808 F.2d at 1483–84.

F.2d at 1468. As reflected in decisions granting or denying access pursuant to discovery Rule 26(c)(7), it is the party seeking disclosure which must carry the burden of establishing that the balance tips in its favor.

■ That rule [15], which governs the discovery of confidential information, affords the court discretion "to avoid unnecessary disclosure ... particularly where the action is between competitors." [16] In order to resist discovery thereunder, a party must establish first that the information sought constitutes confidential commercial information and

> then demonstrate that its disclosure might be harmful. If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of [the information] is relevant and necessary to the action. The district court must balance the need for the [information] against the claim of injury resulting from disclosure. If proof of relevancy or need is not established, discovery should be denied. On the other hand, if relevancy and need are shown, the [information] should be disclosed.... [17]

**II**

■ It is undisputed that the business information under the protective order excluding David Hirsh from access is confidential and that its disclosure to the plaintiff could cause irreparable competitive injury. The burden thereby has shifted to the plaintiff to establish that disclosure to Mr. Hirsh is sufficiently necessary to its case to outweigh the interest in guaranteeing a high degree of confidentiality. Considering the "factual circumstances surrounding" [18] Mr. Hirsh, the plaintiff has failed in this regard.

First, the plaintiff has failed to convince this court that Mr. Hirsh is adequately isolated from the policymaking elements of the Hirsh family corporation to render the risk of disclosure *de minimis*. Regardless of his faithfulness in endeavoring to abide by the terms of a protective order, Mr. Hirsh's unique relationship with the plaintiff increases the risk that the information at issue could be revealed, however unintentional. Although perhaps not directly "involved in the competitive decision-making of the company" [19], Mr. Hirsh until recently was empowered with the authority

---

**15.** It provides, in pertinent part:
> (c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> * * * * * *
> (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; ....

While the disclosure of the administrative record under 19 U.S.C. § 1516a(b)(2)(B) is not technically discovery, it "serve[s] the same purpose. Both are designed to allow a plaintiff to adequately develop and prosecute its case." *Jernberg Forgings Company v. United States*, 8 CIT at 277, n. 3, 598 F.Supp. at 392, n. 3. Because "[t]raditional pretrial discovery and disclosure of administrative records are, at the very least, equivalent procedures" [*Daewoo Electronics Company, Ltd. v. United States*, 10 CIT ——, 650 F.Supp. 1003, 1005 (1986) ], and because the language of Fed.R.Civ.P. 26(c)(7) is essentially identical to CIT Rule 26(c)(7), "we may look to cases construing the federal rule to aid us here." *Sumitomo Metal Industries, Ltd. v.*

*Babcock & Wilcox Co.*, 669 F.2d 703, 705, n. 3 (CCPA 1982). *See Vivitar Corp. v. United States*, 7 CIT 165, 166, 585 F.Supp. 1415, 1417 (1984).

**16.** *A.H. Robins v. Fadely*, 299 F.2d 557, 561 (5th Cir.1962) (footnote omitted), quoting 4 *Moore's Federal Practice* at 2468 (2d ed. 1961). *See also In re Coordinated Pretrial Proceeding In Petroleum Products Litigation*, 101 F.R.D. 34, 40, n. 7 (C.D.Cal.1984) ("While the Rule refers to protection against 'annoyance, embarrassment, oppression or undue burden or expense,' it has been held [to] protect ... against competitive disadvantage as well").

**17.** *Centurion Industries, Inc. v. Warren Steurer and Associates*, 665 F.2d 323, 325–26 (10th Cir. 1981) (footnote and citations omitted).

**18.** *U.S. Steel Corporation v. United States*, 730 F.2d at 1468.

**19.** Plaintiff's Motion, p. 3.
> ... The phrase ["competitive decisionmaking"] would appear serviceable as shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any and all of the client's decisions (pricing,

to act as its president under certain limited circumstances. *See* Hirsh Affidavit, para. 6. He continues to serve as an officer of the plaintiff. *See* Plaintiff's Motion, p. 2; Hirsh Affidavit, para. 4. These facts, in addition to his familial ties to plaintiff's operating officers [20], suggest a lack of isolation of Mr. Hirsh from the commercial activities of the company, thus creating an "unacceptable opportunity for inadvertent disclosure". *U.S. Steel Corporation v. United States*, 730 F.2d at 1468. *Cf. Akzo N.V. v. U.S. International Trade Commission*, 808 F.2d at 1483–84. Particularly in a small corporation where insulation of one department from another is insignificant, if it exists at all, there remains a justified concern that disclosure to Mr. Hirsh would place him "under the unnatural and unremitting strain of having to exercise constant self-censorship in [his] normal working relations." *Atlantic Sugar, Ltd. v. United States*, 85 Cust.Ct. 133, 133–34 (1980).

Some courts have responded to this and other, similar concerns by simply excluding corporate counsel from access under the assumption that opportunity for improper disclosure would thereby be minimized. *See, e.g., FTC v. Exxon Corporation*, 636 F.2d 1336, 1350–51 (D.C.Cir.1980) (lower court's denial of access to in-house legal department to competitively sensitive information of subsidiary upheld); *Atlantic Sugar, Ltd. v. United States, supra; FTC v. United States Pipe and Foundry Company*, 304 F.Supp. 1254, 1260–61 (D.D.C. 1969) (access denied to counsel of record who also served as corporate officer). *See also Nakajima All Co., Ltd. v. United States*, 2 CIT at 174 and 3 CIT 69, 70–72 (1982) [Available on WESTLAW DCTU database]; *Armco, Inc. v. United States*, 1 CIT 131, 132 (1981).

However, whether counsel is in-house or retained [21], "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so" [22] and, as a result, attendant conflicts can arise. *Cf. FTC v. Exxon Corporation*, 636 F.2d at 1350–51, citing *SCM v. Xerox Corporation*, Civil No. 15,-807 (D.Conn. May 25, 1977) (Pre-Trial Ruling No. 44) (A. 996–1000), *aff'd sub nom. In re Xerox Corp.*, 573 F.2d 1300 (2d Cir.1977) and *In Re Westinghouse Electric Corp. Uranium Contracts Litigation*, 76 F.R.D. 47, 57, n. 6 (W.D.Pa.1977).

The plaintiff offers little to assuage this court's concern in light of the foregoing, other than to aver that David Hirsh's role in the company has no bearing on policy matters.[23] A more substantial showing of corporate counsel's independence is required to satisfy plaintiff's burden of demonstrating that risk of unfair use of the

---

product design, etc.) made in light of similar or corresponding information about a competitor.
*U.S. Steel Corporation v. United States*, 730 F.2d at 1468, n. 3.

**20.** *See* Hirsh Affidavit, para. 5.

**21.** In the *U.S. Steel* case, the Federal Circuit held that "status as in-house counsel cannot alone create the probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access". 730 F.2d at 1469. *See also Baxter Travenol Laboratories, Inc. v. LeMay*, 89 F.R.D. 410, 419 (S.D.Ohio 1981), where the court's decision to grant access to confidential material was made without regard to counsel's status as in-house. Rather, it was based on the court's conclusion that the plaintiff's corporate counsel had the ability to differentiate "between the proper uses of confidential information disclosed to him as 'trial counsel' in preparing for th[e] litigation and its improper

uses in his role as 'in-house' counsel in serving [p]laintiffs' regular business purposes." *Id.* at 420.

*Baxter* can be distinguished from other cases on the issue of confidential access: there is no indication that the court considered the competing interests of nondisclosure.

**22.** *FTC v. Exxon Corporation*, 636 F.2d 1336, 1350 (D.C.Cir.1980).

**23.** On this point, the plaintiff asserts that Mr. Hirsh's responsibilities as in-house counsel
are primarily confined to furnishing legal advice incident to business transactions, handling labor negotiations and insurance claims, negotiating and reviewing contracts, and other such duties of a legal nature. Although an officer of plaintiff, he is neither a director nor shareholder, and is not involved in the competitive decisionmaking of the company. Plaintiff's Motion, p. 3.

confidential information is too remote to be of any consequence.

The second way in which the plaintiff fails to carry its burden is by not demonstrating a clear need for covering David Hirsh with the protective order. *See, e.g., Akzo N.V. v. U.S. International Trade Commission,* 808 F.2d at 1484. While access is necessary in order to prepare plaintiff's case, its need has already been satisfied by disclosure to its retained counsel, James A. Resti, Esq., under the December 1st protective order. Thus, requiring the plaintiff to rely on this attorney does not create the "undue and unnecessary burden" claimed in its motion, page 3.

Concern over such a burden was one of the grounds for the circuit court's decision in the *U.S. Steel* case, *supra,* to vacate the CIT ruling, which had required the corporation to retain outside counsel or be denied access. *See* 730 F.2d at 1468. In that case, however, the plaintiff had been represented exclusively by in-house counsel into the advanced stages of the litigation.

In contrast, outside counsel has been retained by the plaintiff in this action at least since the filing of the motion at issue. Moreover, having represented A. Hirsh, Inc. and others in the underlying administrative proceeding, Mr. Resti's familiarity with that proceeding prior to commencement of this action can be presumed. In short, in view of retained counsel's competence, it is not clear how plaintiff's position will be prejudiced by excluding Mr. Hirsh from access to the nonpublic part of the agency record. *See Akzo N.V. v. U.S. International Trade Commission,* 808 F.2d at 1484. Any claim of hardship therefore must relate solely to finances. On this point, the plaintiff contends that Mr. Hirsh's

> service as co-counsel to outside counsel is necessary for plaintiff to prosecute this litigation, since plaintiff is without sufficient financial wherewithal to turn the matter over completely to outside counsel. We note, in this regard, that Mr. Hirsh instituted this litigation himself and only thereafter requested the appearance of outside counsel. His complete involvement in all aspects of this litigation is crucial, and the denial of access to the record by him may result in an inability to meaningfully litigate plaintiff's claims. Plaintiff's Motion, p. 3.

The plaintiff further asserts that its lack of "cash reserves to fund the costs of retaining counsel" stems from the high duty imposed on paint brushes from the People's Republic of China, from costs incurred to counter attempts to unionize the firm's employees, and from the impact of the dollar's loss of value on the price of raw materials imported by the plaintiff.[24]

██ The court, however, will not deviate from a policy of providing protection to highly sensitive information exclusively on the ground of a plaintiff's claimed inability to "bear the expense of turning the subject litigation entirely over to outside counsel."[25] That factor alone, while of some moment, does *not* outweigh the competing interest of maintaining confidentiality.

██ As an alternative to full disclosure to Mr. Hirsh, the plaintiff urges ·that the court grant him access to "all confidential information except those documents which contain information as to prices, quantities, and other terms of sale of merchandise and general financial condition relating to plain-

---

**24.** *See* Affirmation of Plaintiff's In-House Counsel In Response to Defendant-Intervenor's Motion for Permission to Respond Out of Time to the Motion of Plaintiff's In-House Counsel for Disclosure of Confidential Documents, Comments or Information, p. 2. As the title of this affirmation indicates, the intervenor-defendant has interposed a motion for leave to respond to the plaintiff which is too late and therefore must be, and hereby is, denied.

**25.** Hirsh Affidavit, para. 7. The court notes in passing that, although access to the confidential record has not been necessary for plaintiff's preparation of this motion or to respond to a motion to intervene filed by the petitioners in the underlying proceeding [*see* Memorandum and Order (Dec. 31, 1986)], the services of Mr. Resti were evident in papers submitted on plaintiff's behalf in both matters. Moreover, the complaint indicates on its face that, in addition to Mr. Hirsh, the law firm with which he is associated, namely, Fell & Spalding, has also been involved in this action.

tiff's competitors." Plaintiff's Reply, pp. 4–5. This suggestion, which presumes that some documents deserve less protection than others, might be an alternative under a different set of circumstances—for example, where the defendant has opposed release of non-public information at all. If there were such an objection to the disclosure under *any* terms and conditions to a party seeking judicial review, the court could find it necessary to exercise its discretion pursuant to 19 U.S.C. § 1516a(b)(2)(B). That provision authorizes the court to conduct an *in camera* examination of the confidential or privileged material to determine whether individual documents continue to merit such a mantle in view of the competing interests of the parties. *See, e.g., West Coast Industries, Inc., Div. of Winer Industries, Inc. v. United States,* 3 CIT 73, 74 (1982) [Available on WESTLAW DCTU database]; *Atlantic Sugar, Ltd. v. United States,* 85 Cust.Ct. 114 (1980). In this action, however, such an examination is not necessary. That is, without reason to doubt the agencies' designations of documents as confidential, *in camera* inspection would serve only to impede unnecessarily the progress of this ac-

tion. *See, e.g., Zenith Radio Corp. v. Matsushita Industrial Co., Ltd.,* 529 F.Supp. 866, 879, n. 18 (E.D.Pa.1981); *In Re Coordinated Pretrial Proceedings In Petroleum Products Litigation,* 101 F.R.D. 34, 41 (C.D.Cal.1984).

### Conclusion

In summary, the foregoing considerations supporting access restricted to outside counsel outweigh those favoring disclosure to David B. Hirsh. Granting complete access exclusively to Mr. Resti is fully consistent with the sound and well-established judicial policy of safeguarding commercially sensitive information. Accordingly, plaintiff's motion for disclosure of confidential information to Mr. Hirsh must be denied.

So ordered.