**DAEWOO ELECTRONICS COMPANY, LTD., et al., Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 85–01–00140

United States Court of International Trade.

Dec. 2, 1986.

Frederick L. Ikenson, P.C., Frederick L. Ikenson and J. Eric Nissley for defendant-intervenor Zenith Electronics Corp.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, J. Kevin Horgan, for the defendant.

## MEMORANDUM OPINION AND ORDER

WATSON, Judge:

This opinion decides contested motions to compel discovery and for sanctions in a judicial review of the final results of the Department of Commerce's review of the antidumping duty order covering color television sets from Korea.

This controversy is a good example of how the development of new technology for using, storing and transmitting information allows parties to test the rules of disclosure or discovery. It also teaches the important lesson that if these new developments are not treated with common sense and fairness they may become a threat to the meaningfulness of judicial review.

On August 8, 1985 the court ordered the Department of Commerce ("Commerce") to provide the Zenith Electronic Corporation ("Zenith"), a defendant intervenor, with copies of the computer tapes submitted to, or used by it, in arriving at the final results of the administrative review. Zenith has now moved for an order compelling production of computer programs, data sets and related technical aids as well as for sanctions for earlier failures to comply by the Commerce Department. From the motion papers, which were thorough and which eliminated the need for oral argument, the court has learned of the difficulties which led to this motion and of the narrowing of the dispute in the course of this motion.

Following the initial order of the court directing disclosure, three areas of difficulty arose. First, on three occasions, Commerce provided Zenith with computer tapes containing information recorded at a density much greater than was stated by Commerce. This was roughly analogous to sending information on a microdot to someone who was only equipped to read a postcard.

Second, after going to additional expense to transform the tape to a usable density, Zenith found that data for home market

sales of two companies was not included. Commerce then located the missing tapes and supplied them to Zenith.

Third, Commerce refused to provide material known as SAS data sets, unless the original order was amended to specifically include them. The SAS data sets are the final refined forms of the data on the original computer tapes, extracted by Commerce from the submitted tapes, stored as electronic data in a main frame computer at the National Institute of Health (NIH), and used in arriving at Commerce's final results. As this facet of the dispute developed in the motion papers two points became clear: First, Commerce had destroyed the information needed to recreate the SAS data sets from the raw data tapes.[1] This left the SAS sets themselves as the only source of the actual data used by Commerce in generating its final results. Second, for Zenith to receive the SAS sets on its smaller computer (even after having to obtain a license to use the SAS program, since it is copyrighted by a private company) the SAS data would have to be put into a form known as sequential data files.

At the end of this phase of the dispute Commerce insists that the SAS data sets are not covered by the original order, although it does not object to disclosure by an amended order. In addition, Commerce objects completely to transferring the SAS data sets in the format of sequential files, claiming that this would be tantamount to requiring them to generate material not used in the administrative review and would further be unduly burdensome and impair its ability to function in general.

■ In this decision the court grants Zenith's motion to compel the production of the SAS data sets in the form of sequential files. The basis of this ruling is the court's opinion that its orders with respect to disclosure of the administrative record should be construed liberally and should not be impeded by excessively technical objec-

tions. As to Zenith's motion for sanctions, the court finds that sanctions should not be imposed on the government for conduct in the early stages of adjusting to new technical procedures even though the conduct may contain elements of negligence or gamesmanship. This is done primarily to protect the greater good of allowing parties to truly test the limits when laws or rules are applied in new circumstances.

■ On the question of the repeated failure of Commerce to supply tapes with the proper density the court accepts the government's explanation that it did not learn how to do this until its fourth attempt. At that point Commerce discovered that a special overriding instruction was needed in order to induce the NIH computer to produce tapes with the correct density. Prior to that, the computer apparently gave the appearance of complying with the desired result but, in obedience to some embedded command, continued to produce tape with a high density.

■ On the subject of the missing tapes, the failure to include them and the delay in locating them is forgiven as an unintentional consequence of labeling and record keeping difficulties in the early stage.

The court is more troubled by indications that Commerce took an inordinately restrictive view of its obligations under the order. While there is undoubtedly an adversarial nature to these proceedings, the area of disclosure of the components of the administrative action is not where the extremes of adversarial technique ought to be displayed.

■ Traditional pretrial discovery and the disclosure of administrative records are, at the very least, equivalent procedures. *Jernberg Forgings Co. v. United States*, 8 CIT 275, 277 n. 3, 598 F.Supp. 390, 392 n. 3 (1984). If anything, the duties of a party with respect to turning over the contents of an administrative record are

---

1. The court notes that even if the information about how Commerce transformed the raw data into the final data on the SAS sets had survived, it is doubtful that the court would restrict a party to the information needed to duplicate that process, rather than to gaining access to the final data sets.

more certain than the obligations of ordinary discovery. The administrative record is the explicit subject of a statutory mandate, the unique object of judicial review, and a matter of known importance at all times. *See,* 19 U.S.C. § 1516a(b)(2).

The court ordered the government to turn over the computer tapes used in the administrative proceeding. The government took the most literal possible reading, saying that it meant only reels of tape and not the distillation of that data which resides in the further refined form of electronic impulses in the NIH computer. This could be taken for sophistry and obstructiveness. To say that the data sets into which the computer tapes were transferred are not governed by an order speaking of computer tapes is as if someone had said at the dawn of the era of typewriters that typed documents are not governed by a court order speaking of "writings." This sort of conduct led to sanctions for a defendant which argued that it could not comply with a request for its "ledgers and journals" because its business records were computerized and available only in a "codified computer printout." *Emerick v. Fenick Industries, Inc.,* 539 F.2d 1379 (5th Cir.1976).

This court, in its original order, used "computer tapes" to mean all forms of data which are uniquely subject to manipulation by computers, i.e., those forms that are electronic records. If this was technically imprecise, then Commerce has taken unfair advantage of the court's lack of familiarity with the variety of further electronic refinements and embodiments of taped information.

■ It would be a dangerous development in the law if new techniques for easing the use of information become a hindrance to discovery or disclosure in litigation. The use of excessive technical distinctions is inconsistent with the guiding principle that information which is stored, used, or transmitted in new forms should be available through discovery with the same openness as traditional forms. This is within the plain contemplation of CIT

Rule 34. It is also in consonance with Rule 34 of the Federal Rules of Civil Procedure, and the revision comments of the Advisory Committee which indicate that the rule is intended to keep pace with changing technology. *See* 48 F.R.D. 487, 527 (1970). It follows that court orders to disclose computer tapes used in the administrative proceeding should be understood to include disclosure of all further refined forms of electronic storage of the data involved.

In addition to the government's restrictive view of its basic obligation under the disclosure order, the government also objects to Zenith's request that the data be transmitted in the form of sequential data files.

■ It appears to the court that the placing of this data into sequential files is comparable to the normal ordering of files which would have to be done by the respondent in routine discovery of documents. The normal and reasonable translation of electronic data into a form usable by the discovering party should be the ordinary and foreseeable burden of a respondent in the absence of a showing of extraordinary hardship. The government has made no such showing. Similarly, a normal and reasonable degree of direct communication and assistance to the discovering party is the unavoidable burden of the respondent, in the absence of a showing of extraordinary hardship. The government has made no such showing. This court is not requiring the government to create something new or to render exceptional assistance. It is simply requiring that an existing body of data be transmitted in a reasonably usable way with a modicum of cooperation.

This view is supported by the Manual for Complex Litigation, *See,* § 2.715 (4th ed. 1979). The disclosure ordered here does not go nearly as far as a type of electronic data disclosure which was ordered in *National Union Elec. Co. v. Matsushita Elec. Industry Co.,* 494 F.Supp. 1257, 1262 (E.D. Pa.1980).

In concluding, the court notes that the government's attitude towards its obli-

gation to transmit information and the characterization of that duty as an interference with, or unwarranted burden on normal administrative operation, has the potential to create very serious problems. It raises the specter of a society in which decisions may be unexaminable because they are accomplished by electronic means too complex and unique to be transmitted in a comprehensible way even to those citizens sufficiently knowledgeable to analyze the relevant data. In this cybernetic new world the effort needed to transmit and explain the basis for the decisions would interfere with the making of other decisions, so that all functioning comes to depend on insulation from critical examination.

This is the logical end of the position taken by the government and this is the reason why it must be rejected. Although efficiency is a desirable goal of government, it does not justify a diminution of basic rights which are crucial to the operation of judicial review. *Youngstown Sheet & Tube Co. et al. v. Sawyer*, 343 U.S. 579, 629, 72 S.Ct. 863, 886, 96 L.Ed. 1153 (1951).

For the reasons expressed above it is hereby

ORDERED, ADJUDGED, AND DECREED that the Department of Commerce shall

1. Provide to Zenith's counsel all computerized data consisting of so-called SAS data sets used by said Department in calculating the final results of the administrative review under challenge herein, such data sets to be transferred to Zenith's counsel in the form of sequential data files recorded on magnetic tape, together with the instructions (also recorded on magnetic tape) used to prepare such files;

2. Provide to Zenith's counsel machine-readable copies, recorded on magnetic tape, of the SAS computer programs used to generate the final results; and

3. Render to Zenith's counsel such cooperation and reasonable assistance as is necessary to enable them to process the computerized data, including, but not necessar-

ily limited to, conferring with Zenith's counsel and automated data processing ("ADP") expert.

In all other respects, including the motion for sanctions and the motion for oral argument, the motions are denied.