YALE MATERIALS HANDLING CORPORATION and Sumitomo-Yale of Japan, et al., Plaintiffs,

v.

The UNITED STATES, et al., Defendants,

Hyster Co., et al., Defendants, Intervenors.

Court No. 87–10–01008.

United States Court of International Trade.

Nov. 3, 1987.

Thompson, Hine and Flory (Mark Roy Sandstrom and David Epstein, Washington, D.C., of counsel), for plaintiffs Yale Materials Handling Corp. and Sumitomo–Yale of Japan.

Arnold & Porter (Patrick F.J. Macrory and Daniel C. Esty, Washington, D.C., of counsel), for plaintiffs Nissan Indus. Equipment Co. and Nissan Motor Co., Ltd.

O'Melveny & Myers (Kermit W. Almstedt, Washington, D.C., and Greyson Bryan, of counsel), for plaintiff Toyo Umpanki Co., Ltd.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. (Martha M. Ries, Attorney, Commercial Litigation Branch and Jean Heilman Grier, Attorney-Advisor, Office of the Chief Counsel for International Trade, U.S. Dept. of Commerce) for the government defendants.

Collier, Shannon, Rill & Scott (Paul C. Rosenthal, Mary T. Staley and Robin H. Beeckman), Washington, D.C., for defendants-intervenors Hyster Co., Intern. Lift Truck Builders Union, et al.

## MEMORANDUM OPINION AND ORDER

WATSON, Judge:

On October 14, 1987, the Court granted a temporary restraining order sought by Yale Materials Handling Corporation and Sumitomo-Yale of Japan, ("Yale") as part of an action for injunctive relief. The order temporarily enjoined the Department of Commerce from releasing any computer tapes which had been submitted by respondents in an antidumping investigation of industrial forklift trucks from Japan. The order was issued with the prospect that, in releasing confidential information under 19 U.S.C. § 1677f(c), Commerce was going to require the use of outside computer companies to process the tapes submitted by respondents before they would be turned over for the use of petitioners, and, as a result, respondents would face irreparable injury.

The original temporary restraining order was overbroad because, in addition to enjoining the release of Yale's tapes, it enjoined the release of tapes submitted by respondents who had not sought relief in the court. The government moved to modify the original order. In the meantime, in a telephone conference held on October 20, 1987, a number of other respondents made known their intention to join or intervene in this action. In the interests of justice and judicial economy the original temporary restraining order was then extended to October 28, 1987, at which time the parties to this action assumed their respective positions in the action for injunctive relief.

On that date the temporary restraining order was modified to exclude those respondents who did not appear and various new parties entered the action. Yale was joined by Nissan Motors Co., Ltd. and Nissan Industrial Equipment Co. ("Nissan") and Toyo Umpanki Co., Ltd. On the government's side, intervention was granted to the Hyster Co., the Independent Lift Truck Builders Union, the International Association of Machinists and Aerospace Workers, the International Union–Allied Industrial Workers of America (AFL–CIO), the United Shop and Service Employees, and an Ad–Hoc Group of Workers from Hyster's Berea, Kentucky and Sulligent, Alabama manufacturing facilities. A hearing was held at which oral argument was heard and testimony was received, establishing that, if Yale's computer tapes were to be improperly used, irreparable injury would result.

At the conclusion of the hearing, the temporary restraining order was extended to November 3, 1987 and on that date this opinion issues, granting the motion for a preliminary injunction in part and denying it in part.

 The proposal to use outside computer companies to process the computer tapes which are to be disclosed to counsel for petitioners was not in accordance with the law. The dangers posed by unauthorized transmission and use of confidential information are magnified when the information is on computer tape. It is therefore essential that meaningful sanctions insure that persons entrusted with that information will secure it by all prudent and reasonable means. The sanctions proposed for computer companies do not meet this test because they do not contain the required degree of deterrence.

The sanctions proposed by Commerce for employees of these computer companies include the suspension of the violator from practice before the Commerce Department for up to seven years and "such other administrative sanctions" as may be imposed. This appears to be a pale and ineffectual variant of the sanctions for those violations occurring under the aegis of an attorney, which are disbarment of the attorney from practice before Commerce and the further prospect of professional disbarment. In the absence of sanctions of a similar unavoidable and catastrophic nature for outside computer companies the safeguards which the law requires for this information cannot be assured and the release of information to such entities cannot be justified when not consented to. The decision in *Timken Co. v. United States,* 11 CIT ——, 659 F.Supp. 239 (1987) did not deal with a challenge to the release of computer tapes to outside computer compa-

nies and therefore offers no guidance for the resolution of this dispute.

 On the other hand, the fact that the information is in the form of computer tape does not justify the further relief which movants seek, i.e., that all release be enjoined until, after a rule-making procedure, Commerce promulgate rules governing the handling of such material.

 With respect to counsel for petitioners, the situation is quite different. The information has already been placed in the hands of counsel for the petitioners in printed form, i.e., "hard copy," to which the movants do not (and cannot) object. Here, the gravamen of the complaint is that the administrative protective order devised by Commerce is still insufficient to safeguard the information in the form of computer tapes, even in the hands of counsel, because there is a far greater risk of unauthorized transmission and use.

For this argument the rigors of the classic test for injunctive relief prove their usefulness. First, what has been shown, troubling as it is, is not the likelihood of injury, it is only a *possibility*, in the speculative sense of the word.

Second, the likelihood of success on the merits is not sufficiently clear. Commerce is acting under its lawful authority, in conformity with established procedures in a manner entirely distinguishable from its conduct in *Sacilor, Acieries et Laminoirs de Lorraine, et al. v. United States*, 3 CIT 191, 542 F.Supp. 1020 (1982). Although the Court is persuaded that computer tapes require a heightened level of protection, it has not been persuaded that the administrative protective order is inadequate to achieve that purpose.

With the first two factors being what they are, the remaining factors of balancing the harm should an injunction issue and analyzing public policy are not really germane.

 We are left with the conclusion that, once Commerce has complied with the law, unless a party can show that the release of its information by Commerce to counsel for another party to the proceeding poses a clear and present danger, demonstrated by evidence regarding actual conditions, the technical possibility of injury is not enough.

In accordance with the views expressed herein, it is hereby ORDERED that defendants, their agents, servants, employees and all persons in active concert and participation with them are preliminarily enjoined from releasing or ordering the release of the computer tapes of plaintiffs submitted in the antidumping investigation bearing Docket No. A 588–703, to any independent computer facility, and it is further

ORDERED that, in all other respects, the motion for injunctive relief is denied.