**AMERICAN BRASS, et al., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**Wieland–Werke AG, et al., Defendants–Intervenors.**

**Court No. 87–04–00589.**

United States Court of International Trade.

Nov. 8, 1988.

Collier, Shannon, Rill & Scott, Jeffrey Beckington and Nicholas Giordano, Washington, D.C., for plaintiffs.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., M. Martha Ries, Jefferson City, Mo., for defendant.

Arnold & Porter, Grant Finlayson and Michael Shor, Washington, D.C., for defendants-intervenors.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Judge:

Domestic producers of brass strip and sheet and unions representing workers in the brass industry (plaintiffs) challenge the denial of access to computer tapes used in reaching a final affirmative determination of sales at less than fair value of brass sheet and strip from West Germany. *Final Determination of Sales at Less Than Fair Value: Brass Sheet and Strip from the Federal Republic of Germany,* 52 Fed. Reg. 822 (Jan. 9, 1987), *amended,* 52 Fed. Reg. 35,750 (Sept. 23, 1987). The International Trade Administration of the United States Department of Commerce (Commerce) had already provided plaintiffs a certified copy of the administrative record, including microfilm and printouts of data supplied by the West German respondents (Wieland), but refused access to the computer tapes.

The Court grants plaintiffs' request for access under a protective order to ensure the confidentiality of business proprietary information contained on the computer tapes.

## DISCUSSION

Plaintiffs argue the tapes are part of the record and should be provided because Commerce obtained the tapes during its investigation and based its determination on information in them.

Commerce and Wieland argue against granting access to the computer tapes because (1) plaintiffs already have a complete copy of the record, (2) releasing the tapes would risk unauthorized disclosure of proprietary information, (3) plaintiffs do not need the tapes to present their arguments, and (4) producing the tapes would impair Commerce's ability to obtain tapes in the future.

■ Congress defined the administrative record as consisting of:

(i) *a copy of all information* presented to or obtained by ... [Commerce] ... during the course of the administrative proceeding ... [and]

(ii) a copy of the determination, all transcripts or records of conferences or hearings....

19 U.S.C. § 1516a(b)(2)(A) (1982) (emphasis added).

As they contain information obtained in the investigation, the tapes are part of the administrative record. *See Daewoo Elecs. Co. v. United States,* 10 CIT 754, 650 F.Supp. 1003 (1986). Nevertheless, Commerce need only provide a *copy* of the record. Neither the statute nor legislative history specify the form that copy must take. *See* S.Rep. No. 249, 96th Cong., 1st Sess. 28, *reprinted in* 1979 U.S. Code Cong. & Admin. News 381, 414. *See also* Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, § 1332, 102 Stat. 1107, 1207–09 (1988).

Plaintiffs are not deprived of any of information in the record. Commerce provided a copy of all information obtained in the investigation, even if not in a form plaintiffs wish.

■ Plaintiffs argue nonetheless that the printout information is too complicated and voluminous to be usable for their appeal. Although Commerce provided plaintiffs with a copy of the record as defined

by 19 U.S.C. § 1516a(b)(2)(A) (1982), Commerce does not have unfettered discretion to provide a copy of the record in a form unusable to the other party. As this court has noted, "[d]ata released in an unusable form are ... the equivalent of no data at all." *Timken Co. v. United States,* 11 CIT —, 659 F.Supp. 239, 240 n. 3 (1987).

■ Plaintiffs cannot, however, claim an absolute right of access to the tapes because the data on them include business proprietary information such as customer names, financial data, and details of sales transactions in the United States and Europe. The court has broad discretion under 19 U.S.C. § 1516a(b)(2)(B) (1982) to "disclose [confidential] material under such terms and conditions as it may order." *See A. Hirsh, Inc. v. United States,* 11 CIT —, 657 F.Supp. 1297, 1300 (1987). If the copy of the administrative record is in a form unusable to the petitioner, the Court may direct Commerce to provide a different form subject to protective order notwithstanding its confidential content.

In exercising its discretion to disclose confidential information the Court must balance the competing interests of the parties. The stated rule is that:

> Actions to compel disclosure of business proprietary information under protective order are evaluated in this Court *de novo* on the administrative record to determine whether the need of the party requesting access to the information outweighs the need of the party submitting the information for continued confidential treatment.

*D & L Supply Co. v. United States,* 12 CIT —, 693 F.Supp. 1179, 1181 (1988); 19 U.S.C. § 1677f(c)(2) and 28 U.S.C. § 2640(a)(4) (1982); S.Rep. No. 249, 96th Cong., 1st Sess. 100, *reprinted in* 1979 U.S. Code Cong. & Admin. News 486; *See also Timken,* 11 CIT at —, 659 F.Supp. at 240. Each case must be considered in light of its own particular facts and circumstances. *American Spring Wire Corp. v. United States,* 5 CIT 256, 257, 566 F.Supp. 1538, 1540 (1983).

In balancing the interests of the parties, the Court will consider:

> (1) the needs of the litigants for data used by the government in order to adequately respond to [Commerce's] finding, (2) the needs of the government in obtaining confidential information from businesses in future proceedings, and (3) the needs of the [disclosing parties] to protect from disclosure information which, in the hands of a competitor, might injure their respective positions in the industry.

*Roquette Freres v. United States,* 5 CIT 239, 240–41, 554 F.Supp. 1246, 1248 (1982).

### The Parties' Interests

1. American Brass

■ The printouts of the Wieland data are several thousand pages. All parties concede that for plaintiffs to convert this quantity of printout to computer readable form would be prohibitively time consuming and costly. The parties disagree, however, on whether the plaintiffs require the data they seek in electronic form. Commerce and Wieland argue that for the purposes plaintiffs claim they need the tapes, the information is either readily accessible from the printout or not on the tapes.

Plaintiffs assert the tapes are necessary for full participation in their own and in Wieland's appeal of Commerce's determination. Plaintiffs claim they require the tapes to identify factual errors and to ascertain whether Commerce's methodology used to calculate adjustments in the dumping margin on Wieland's products is substantially supported on the record. Specifically, plaintiffs wish to review the accuracy of Commerce's adjustment calculations on quantity discounts, product comparisons, warehousing expenses, differences in merchandise, currency conversion, and deletion of certain sales. Plaintiffs claim a proper and full analysis will involve complex calculations that would be prohibitively costly and time consuming to do solely from the thousands of pages of printout. Plaintiffs claim an independent examination of Commerce's methodology is in keeping with the increasing accountability to which Commerce has come to be subjected. Commerce argues that this inquiry is im-

proper, because it is for Commerce alone to choose which methodology to employ.

The Court applies a deferential standard of review to Commerce's choice of methodology. *See Mitsubishi Elec. Corp. v. United States*, 12 CIT ___, 700 F.Supp. 538, 558 (1988); *Silver Reed Am., Inc. v. United States*, 12 CIT ___, 679 F.Supp. 12 (1988). Nevertheless, the Court is not, at this point, reviewing the merits of the methodology chosen. At this stage, plaintiffs may challenge Commerce choice of methodology. If plaintiffs' reexamination of Commerce's adjustment calculations will assist a reviewing court in determining the reasonableness of Commerce's methodology, reexamination of the calculations is permissible.

## 2. Wieland

Wieland asserts that its need to maintain the confidentiality of its data outweighs any need of the plaintiffs for access to the computer tapes. Wieland claims release of the tapes poses unreasonable risk because of the ease with which electronically stored information may be inadvertently or surreptitiously transferred and manipulated with the attendant possibility of revealing to competitor's client names, marketing strategies and other confidential information to competitors. Should its competitors gain this information, Wieland would suffer irreparable commercial harm.

Congress has directed that the "confidential or privileged status accorded to any documents, comments, or information shall be preserved ..." in antidumping and countervailing duty actions. 19 U.S.C. § 1516a(b)(2)(B) (1982). Even an inadvertent disclosure of confidential information can be highly damaging to a business. *Chevron U.S.A., Inc. v. United States*, 11 CIT ___, Slip Op. 87–13 at 6 (Feb. 6, 1987) [available on WESTLAW, 1987 WL 6318]. A higher risk of unauthorized disclosure of confidential information on computer tape as opposed to printouts warrants a heightened level of protection for computer tapes. *See Yale Materials Handling Corp. v. United States*, 11 CIT ___, 674 F.Supp. 865, 867 (1987). Nevertheless, "where complex match models are involved, computer tapes may be essential for effective advocacy." *Timken Co. v. United States*, 11 CIT ___, 659 F.Supp. 239, 242 (1987).

Several factors in this case indicate that a protective order would adequately achieve a necessary level of protection. First, all of the confidential information is already in the hands of the plaintiffs in printout form under a separate protective order. Although this disclosure may have occurred without Wieland's consent, that is an issue between Wieland and Commerce which initially supplied plaintiffs the information. Second, there is only a mere possibility but no apparent likelihood of disclosure. *See Yale Materials Handling Corp.*, 11 CIT at ___, 674 F.Supp. at 868. Third, the tapes would not be in the hands of the plaintiffs but rather in the sole custody of plaintiffs' outside counsel. *See D & L Supply Co.*, 12 CIT at ___, 693 F.Supp. at 1182. Processing would be done in-house at the computer facility on the business premises of plaintiffs' counsel. Plaintiffs' counsel have used their computer facility in other cases with Commerce's inspection and approval. There is no indication that the tapes would not be adequately protected in this facility. Fourth, plaintiffs' counsel are officers of the Court subject to disbarment and other sanctions should they disclose any judicially protected information. 19 C.F.R. § 355.20(e) (1988). With all of these factors, risk of disclosure would be slight despite the more sensitive nature of the computer tapes and lack of an absolute guarantee of protection from a judicial order. *See U.S. Steel Corp. v. United States*, 2 Fed.Cir. (T) 46, 50, 730 F.2d 1465, 1468 (1984).

Finally, contrary to Wieland's assertions, third parties such as computer programmers are not *per se* excluded from access to confidential information on computer tape. While it may be unusual to allow access to confidential information to persons other than counsel, as long as a protective order can fashion adequate sanctions to deter disclosure by any third parties who may come into contact with the tapes it is sufficient protection. *Cf. Yale Materials Handling Corp.*, 11 CIT at ___, 674 F.Supp. at 867 (sanctions in a protec-

tive order as to outside computer companies did not contain the required degree of deterrence). While the fact that third parties may be required to assist processing of the tapes may be a factor in the decision whether to release confidential information, it will not, in and of itself, preclude access. To conclude otherwise would effectively make computer tapes unavailable in any case where counsel find it necessary to seek the assistance of computer programmers.

### 3. Commerce

Commerce asserts that release of the tapes would impair its ability to procure computer tapes in future investigations. Other West German respondents have already voiced concern about protection of confidential data requested by Commerce in antidumping investigations. *Memorandum of Defendant–Intervenors*, Appendix at ¶ 12.

The importance of avoiding such a chilling effect in future Commerce investigations has weighed heavily in prior confidential disclosure cases. *See, e.g., A. Hirsh, Inc. v. United States*, 11 CIT ——, 657 F.Supp. 1297, 1302 (1987); *Jernberg Forgings Co. v. United States*, 8 CIT 275, 276, 598 F.Supp. 390, 392 (1984); *Roquette Freres Corp. v. United States*, 5 CIT 239, 241, 554 F.Supp. 1246, 1248 (1982); *Nakajima All Co. v. United States*, 2 CIT 170, 174 (1981). Nevertheless, the fact that Commerce has already released unredacted confidential information of Wieland to the plaintiffs substantially weakens its position in this instance. Whether inadvertently or not, plaintiffs already have all the data from the tapes on printout form which includes the names of Wieland's U.S. customers. Commerce may not now claim that release on computer tape of the very unexpurgated information it has already given plaintiffs will harm its ability to procure confidential information in the future.

### CONCLUSION

After considering the arguments presented in the briefs and at oral argument, the Court finds that the plaintiffs' request provides adequate reasons for access to the computer tapes. The Court is satisfied that the printout of the data is unusable by the plaintiffs due to its size and complexity. The Court also agrees that the tapes are necessary for the plaintiffs to mount a meaningful appeal and to participate fully in the appeals of Commerce's final determination.

Upon balancing the competing interests of the parties, the Court also finds that the plaintiffs' need for the tapes outweighs Wieland's concerns of confidentiality and Commerce's interests. Accordingly, the Court directs the parties jointly to fashion a protective order within 20 days allowing plaintiffs access to the tapes. Plaintiffs' counsel are to be supplied a copy of the tapes compatible with the computer system at their in-house computer facility. This copy will contain the same information on the printout and microfilm originally supplied under protective order. Wieland may select any third party who may be necessary to assist copying or processing of the tapes so that Wieland, as the party at risk, will bear the responsibility for any disclosures. *See Timken Co. v. United States*, 11 CIT ——, 659 F.Supp. 239, 243 (1987).

Plaintiffs have agreed to pay the reasonable costs of copying the tapes.