The **TORRINGTON COMPANY,**
Plaintiff,

**Federal–Mogul Corporation,**
**Plaintiff–Intervenor,**

v.

The **UNITED STATES, Defendant,**

**SKF USA Inc. and SKF Industrie,**
**S.p.A.; Fag Cuscinetti SpA,**
**Defendants–Intervenors.**

**Court No. 91–08–00568.**

United States Court of
International Trade.

Feb. 21, 1992.

See also 786 F.Supp. 1016.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Wesley K. Caine, Geert De Prest and Margaret E.O. Edozien, Washington, D.C., for Torrington Co.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley and Joseph A. Perna, V, Washington, D.C., for Federal–Mogul Corp.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis and Jane E. Meehan (Douglas S. Cohen, Dean A. Pinkert and D. Michael Kaye, Attorney–Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C., of counsel), for U.S.

Howrey & Simon, Herbert C. Shelley, Alice A. Kipel, Scott A. Scheele and Thomas J. Trendl, Washington, D.C., for SKF USA INC. and SKF INDUSTRIE, S.p.A.

Grunfeld, Desiderio, Lebowitz & Silverman, Max F. Schutzman, David L. Simon and Andrew B. Schroth, New York City, for FAG CUSCINETTI SpA.

### OPINION

TSOUCALAS, Judge:

In this action, plaintiff challenges the final determination of the International Trade Administration, U.S. Department of Commerce (hereinafter "ITA" or "Commerce"), in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Italy; Final Results of Antidumping Duty Administrative Reviews*, 56 Fed.Reg. 31,751 (1991). Plaintiff has

requested access to confidential materials contained in the administrative record. Included in the request, plaintiff asks for (1) a computer tape of computer programming instructions;[1] (2) a computer tape containing information contained in each SAS data set processed by the computer programs used by Commerce (hereinafter "SAS data sets");[2] and (3) a hard copy, written documentation for each file transmitted on tape. Since no agreement could be reached among the parties concerning the disclosure of these materials, plaintiff brought this motion for access under a Judicial Protective Order.

### Discussion

Plaintiff claims that it is entitled through its counsel to the computer instructions, SAS data sets and the hard copy because they are part of the administrative record. While plaintiff is entitled to the administrative record as it existed before the administrative agency,[3] it is not entitled to the computer instructions, SAS data sets and hard copy since they simply are not part of the administrative record.

Pursuant to 19 U.S.C. § 1516a(b)(2)(A) (1988), the administrative record consists of:

(i) a copy of all information presented to or obtained by the Secretary, the administering authority, or the Commission during the course of the administrative proceeding, including all governmental memoranda pertaining to the case and the record of ex parte meetings required to be kept by section 1677f(a)(3) of this title;[4] and

(ii) a copy of the determination, all transcripts or records of conferences or hearings, and all notices published in the Federal Register.

Furthermore, pursuant to 19 U.S.C. § 1516a(b)(2)(B), documents classified as confidential may be viewed under the terms set forth by the court.[5]

The materials requested by plaintiff, however, are not part of the administrative record. They were not "presented to" or "obtained by" the administrative agency, nor do they even exist. According to the affidavit of David P. Mueller, Director of the Office of Policy, Import Administration, U.S. Department of Commerce, in the "typical case, tape versions of the SAS computer programs and data sets *do not exist*, and they *do not currently exist* in this case. Although certain computer tapes were created in this case to facilitate in the process of preparing microfilm for the court records, these tapes are not the same tapes being sought by Torrington." Affidavit of David P. Mueller at 3 (emphasis in original). Therefore, if these materials do not exist then they simply cannot be part of the administrative record. Furthermore, the administrative record is limited to the particular review proceeding which results in the determination which is the subject of challenge. *Beker Indus. Corp. v. United States*, 7 CIT 313, 1984 WL 3727

---

**1.** Plaintiff requests the computer program used by the ITA to generate the Final Results of the Administrative Review in machine-readable form (ASCII) on unlabeled tape in fixed block format less than 32K bytes per block and density of 6250 or 1600 bpi.

**2.** Plaintiff requests the information to be recorded in the form of machine-readable sequential data files recorded in fixed block format less than 32K bytes per block on unlabeled tape, either 6250 or 1600 bpi together with the instructions.

**3.** *See American Brass v. United States*, 12 CIT 1068, 1069, 699 F.Supp. 934, 935 (1988); *Daewoo Elecs. Co. v. United States*, 10 CIT 754, 650 F.Supp. 1003 (1986).

**4.** 19 U.S.C. § 1677f(a)(3) states that:

The administering authority and the commission shall maintain a record of ex parte meetings between—
(A) interested parties or other persons providing factual information in connection with an investigation, and
(B) the person charged with making the determination, and any person charged with making a final recommendation to that person, in connection with that investigation.

**5.** 19 U.S.C. § 1516a(b)(2)(B) reads as follows:
(B) **Confidential or privileged material.—** The confidential or privileged status accorded to any documents, comments, or information shall be preserved in any action under this section. Notwithstanding the preceding sentence, the court may examine, in camera, the confidential or privileged material, and may disclose such material under such terms and conditions as it may order.

(1984). Any information received by Commerce after the particular determination at issue is not part of the reviewable administrative record. *Ipsco, Inc. v. United States*, 13 CIT 489, 494, 715 F.Supp. 1104, 1109 (1989). Thus, since the computer tapes and the hard copy do not exist, then they would have to be created after the determination and therefore would not be part of the administrative record.

Plaintiff alleges that the computer tapes are necessary to this litigation in order to duplicate the ITA's calculations and verify their findings for accuracy. Access to the tapes, however, is not essential to this litigation as plaintiff will receive the microfilmed computer printouts containing both the computer programming instructions as well as the SAS data sets.

In *Williams v. Owens–Illinois, Inc.*, 665 F.2d 918 (9th Cir.1982), *cert. denied*, 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982), the Ninth Circuit held that appellants were not entitled to computer tapes since all the information on the computer tapes was included on wage cards which the appellants had discovered. The Court stated that "[w]hile using the cards may be more time consuming, difficult and expensive, these reasons, of themselves, do not show that the trial judge abused his discretion in denying appellants the tapes." *Id.* at 933.

Furthermore, this court has also denied a party's request for similar materials after balancing the need of the plaintiffs against the hardship of the defendant in producing this type of information. *See NTN Bearing Corp. v. United States*, Court No. 87–11–01066 (CIT, Sept. 9, 1988).[6] Similarly, this court, on several other occasions, has denied a plaintiff's motion requiring Commerce to create computer tapes. *NTN Bearing Corp. v. United States*, Court No. 89–06–00350 (Order dated May 17, 1990); *Torrington Co. v. United States*, Court No. 89–06–00311 (Order dated April 30, 1990); *Torrington Co. v. United States*,

Court No. 89–06–00357 (Order dated April 30, 1990); *Torrington Co. v. United States*, Court No. 89–06–00358 (Order dated April 30, 1990); *Torrington Co. v. United States*, Court No. 89–06–00359 (Order dated April 30, 1990). Conversely, this Court also has granted requests for electronically stored data. *See Daewoo*, 10 CIT 754, 650 F.Supp. 1003; *The Timken Co. v. United States*, 11 CIT 267, 659 F.Supp. 239 (1987).

The Court in *Timken*, however, noted that each case must be decided on its own facts. The Court stated that:

> The instant case should not be understood as authority for compelling the distribution of computer tapes in all administrative proceedings. The court's decision turned on a wide range of factors, including the need of the party requesting the information and the need of the party submitting it for continued confidential treatment. In subsequent cases these factors and other relevant concerns will no doubt present themselves in a much different balance.

*Timken*, 11 CIT at 272, 659 F.Supp. at 243.

In the instant litigation, plaintiff has not adequately articulated the need for the computer tapes. Defendant, however, has validly enumerated extreme hardship if it was compelled to create the tapes.

In addition, the Court in *Timken* granted plaintiff the computer tapes at a time when Commerce had not yet made its final determinations stating that "it is imperative that parties be able to draw distinctions between a number of potentially reasonable approaches at the administrative level." *Id.* at 271 n. 7, 659 F.Supp. at 242 n. 7.

In this case, however, plaintiff is requesting the information *after* the final determination has been made by Commerce at which time judicial review by this Court is limited to whether Commerce's determinations were "unsupported by substantial evi-

---

**6.** In *NTN Bearing Corp. v. United States*, Court No. 87–11–01066 (CIT, Sept. 9, 1988) this Court stated that:

> [T]he movants have neither articulated the precise need for discovery nor detailed any

hardship they will encounter if the instant motion is denied. Defendants, on the other hand, have cogently enumerated administrative and fiscal burdens they will endure if a discovery order is issued.

dence on the record, or otherwise not in accordance with law." *See* 19 U.S.C. § 1516a(b)(1)(B) (1988).

Plaintiff relies heavily on the court's decision in *Daewoo v. United States*, 10 CIT 754, 650 F.Supp. 1003. In that case, the court ordered Commerce to provide all computerized data. It was further stated that this meant to include "all further refined forms of electronic storage of the data involved." *Id.* at 757, 650 F.Supp. at 1006. In *Daewoo*, however, the government did not demonstrate to the court any hardship or burden since the materials were already on existing computer tape. In this case the data requested does not exist and Commerce would be required to create the computer tapes at great burden and expense.

There are several factors the Court must consider when deciding whether to grant discovery requests to a party. Pursuant to Rule 26(b)(1) of the Rules of this Court, the production of discovery "shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive."

Torrington and the ITA each claim that they would have to incur substantial costs to create the materials requested. An affiant in *Timken*, 11 CIT at 268, 659 F.Supp. at 241, estimated that it would take a keypuncher 7,500 hours to create a computer tape containing the 15,000 pages of printout that was already created. *Id.* In this case, Torrington is asking commerce to do exactly the same thing at their own time and expense.[7] In fact, Mr. Mueller's affidavit estimated that it would take his staff "no less than two weeks" to produce the tapes requested by plaintiff. *See* Mueller Affidavit at 3.

Generally, if a party has demonstrated the need for confidential documents, they will be given unless the burden of one party outweighs the need of the other par-

ty. Plaintiff does not have "an absolute right of access to the tapes." *American Brass*, 12 CIT at 1070, 699 F.Supp. at 936.

Where the burden, cost and time required to produce the tapes is virtually equal on both parties, then the burden of producing the tapes falls on the party requesting the information. To do otherwise would be unfair to Commerce. Furthermore, there is no statute or court rule requiring an agency to create new materials for inclusion in the administrative record or to include information in a particular form. An order requiring Commerce to create the computer tapes and hard copy documentation to Torrington's specifications would impose significant administrative and fiscal hardships upon Commerce and would unnecessarily delay the disposition of this litigation. Thus, the parties are obliged to utilize a source that is "more convenient, less expensive or less burdensome," and that source is the computer printouts supplied by Commerce. *See* US-CIT R. 26(b)(1).

Commerce contends that complete printouts, including the entire SAS program log and the entire SAS output log, will be part of the administrative record. *Defendant's Memorandum in Opposition to the Motion of the Torrington Company for a Judicial Protective Order* at 3, 7. Moreover, Commerce has agreed to provide the parties with a microfilm copy of the record pursuant to an appropriate Judicial Protective Order. *Id.* at 8.

## CONCLUSION

Accordingly, plaintiff's motion for a Judicial Protective Order is denied with respect to its request for (1) computer tapes containing the computer program instructions used by the ITA to generate the final results of the administrative review in the format requested by Torrington; (2) computer tapes containing the information con-

---

**7.** In *Daewoo* and *Timken* the undue burden on the government was not at issue since the tapes were already produced. The Court in *Daewoo* stated that: "This court is not requiring the government to create something new or to render exceptional assistance. It is simply requir- ing that an existing body of data be transmitted in a reasonably usable way with a modicum of cooperation." *Daewoo*, 10 CIT at 757, 650 F.Supp. at 1006. In contrast, plaintiff in this action is requesting Commerce to create something that is not in existence.

tained in each SAS data set processed by the SAS computer programs used by the ITA to generate the final results in the format requested by Torrington; and (3) hard copy, written documentation for each file transmitted on tape, since these materials do not exist and it would be an undue burden on Commerce to produce them. Furthermore, Torrington will resubmit to the Court within 15 days from the date of this order, after consultation with counsel for the other parties, a proposed Judicial Protective Order which excludes references to the three matters referred to above.