NEUWEG FERTIGUNG GmbH Plaintiff,

v.

UNITED STATES, Defendant,

The Torrington Company; Federal–Mogul Corporation, Defendant–Intervenors.

Court No. 91–08–00587.

United States Court of International Trade.

Aug. 20, 1992.

Covington & Burling, Harvey M. Applebaum, David R. Grace and Thomas O. Barnett, Washington, D.C., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis, Washington, D.C. (of counsel: Dean A. Pinkert and Douglas S. Cohen, Attorney–Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce), for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Wesley K. Caine, Myron A. Brilliant, Robert A. Weaver and Amy S. Dwyer, Washington, D.C., for defendant-intervenor The Torrington Co.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley and Joseph A. Perna, V, Washington, D.C., for defendant-intervenor Federal–Mogul Corp.

## OPINION

TSOUCALAS, Judge:

Plaintiff, Neuweg Fertigung GmbH ("Neuweg"), moves pursuant to Rule 56.1 of the Rules of this Court for judgment on the agency record challenging the results of the first administrative review of anti-friction bearings from the Federal Republic of Germany as it relates to Neuweg. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review ("Final Results")*, 56 Fed. Reg. 31,692 (1991). Plaintiff requests this Court to remand this action to the Department of Commerce, International Trade Administration ("ITA"), for recalculation of Neuweg's dumping margin by accounting for plaintiff's customer-specific product codes in matching home market and U.S. sales or, in the alternative, to require the ITA to use less punitive "best information available" ("BIA") as the margin for plaintiff's unmatched sales.

In addition, defendant moves pursuant to Rule 12(f) of the Rules of this Court to strike exhibit A of *Plaintiff's Reply to Defendant and Defendant–Intervenors' Memoranda in Opposition to Plaintiff's Motion for Judgment upon the Agency Record ("Plaintiff's Reply")* and the references to exhibit A on Pages 5 and 8 of *Plaintiff's Reply.*

### Background

Plaintiff requested that the ITA conduct an administrative review of plaintiff's sales of bearings. Administrative Record Germany Public ("AR Germany Pub.") Doc. 2. ITA sent Neuweg section A of the anti-dumping duty questionnaire which required Neuweg to "[d]escribe your product coding system as it applies to [anti-friction bearings]. Provide a key to your product codes, including all prefixes, suffixes, or other notation, which identify special features." Administrative Record General Public ("AR Gen.Pub.") Doc. 3. Neuweg provided the requested information in Appendix A.4, Part 2, of its questionnaire response. AR Germany Pub.Doc. 105. When describing its product coding in its section B and C questionnaire responses, Neuweg referred back to Appendix A.4, Part 2, of its section A questionnaire response. AR Germany Pub.Docs. 193, 239.

On March 15, 1991, the ITA published the preliminary results of the administrative review. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof from the Federal Republic of Germany; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews ("Preliminary Results")*, 56 Fed.Reg. 11,200 (1991).

On March 25, 1991, the ITA held a disclosure conference with Neuweg's counsel to review the preliminary results. The case analyst's memorandum to the file documenting this meeting pointed out that the ITA had been unable to match a considerable number of U.S. sales with home market sales and states in relevant part that

the majority of these non matches appear to be the result of improper product codes. For a number of transactions on the [purchase price] database, the prod-

uct code field also included the customer name, which, of course, prevented matching to take place with comparable home market sales or constructed value (CV). AR Germany Pub.Doc. 542. Neuweg did nothing to address this problem until after release of the Final Results.

In its Final Results, the ITA explained its use of BIA in this review stating that

[i]f a firm failed to provide matching data for a significant portion of its reported U.S. sales by quantity, we used as BIA for those particular transactions the higher of (1) the firm's previous rate (or "all others" rate) from the [less than fair value] investigation, or (2) the highest calculated rate for any firm in this review.

*Final Results*, 56 Fed.Reg. at 31,705.

Neuweg had submitted difference in merchandise ("DIFMER") data only for models for which there were no contemporaneous home market sales, for use in matching bearings within bearing families when identical matches were not possible. As a result of the lack of DIFMER data for the bearings for which the ITA was unable to make identical matches, when the ITA tried to match U.S. sales to home market sales by bearing family, the ITA found that it was unable to match a "significant" number of Neuweg's U.S. sales to home market sales. AR Germany Pub.Doc. 655.

Since Neuweg had not participated in the initial less than fair value investigation, the ITA selected as BIA the 68.89% "all others" rate from the initial investigation as the margin for Neuweg's unmatched sales. AR Germany Confidential Doc. 210.

### Discussion

The Court's jurisdiction over this matter is derived from 28 U.S.C. § 1581(c) (1988).[1]

A final determination by the ITA in an administrative proceeding will be sustained unless that determination is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19

U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States*, 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

#### 1. *Motion to Strike*

This Court's review of a final determination in an administrative review is limited to a review of the administrative record developed in that administrative review. 19 U.S.C. § 1516a(a)(2) (1988). The administrative record is defined as:

(i) a copy of all information presented to or obtained by the ... administering authority ... during the course of the administrative proceeding ...; and

(ii) a copy of the determination, all transcripts or records of conferences or hearings, and all notices published in the Federal Register.

19 U.S.C. § 1516a(b)(2)(A) (1988).

■ The case law of this court is very clear that the administrative record "is limited to the information that was presented to or obtained by the agency making the determination during the particular review proceeding for which section 1516 authorizes judicial review." *Beker Indus. Corp. v. United States*, 7 CIT 313, 316 (1984); *see also Intrepid v. United States*, 15 CIT ——, ——, Slip Op. 91–14 at 3–4, 1991 WL 37876 (March 1, 1991); *Ipsco, Inc. v. United States*, 13 CIT 489, 495, 715 F.Supp. 1104, 1109 (1989). "Any information received by [the ITA] after the particular determination at issue is not part of the reviewable administrative record." *Intrepid*, 15 CIT at ——, Slip Op. 91–14 at 4, 1991 WL 37876 (citing *Ipsco*, 13 CIT at 495, 715 F.Supp. at 1109).

■ The "particular determination at issue" in this case is the ITA's Final Results published on July 11, 1991. The administrative record in this case consists of all

---

**1.** 28 U.S.C. § 1581(c) provides in pertinent part: The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A of the Tariff Act of 1930.

materials submitted to or obtained by the ITA between the initiation of this administrative review on June 1, 1990 and the publication of the Final Results in this review on July 11, 1991. Any submissions made by plaintiff after July 11, 1991 are clearly not a part of the administrative record which this Court can use to review the Final Results.

Therefore, plaintiff's letter to the ITA dated July 18, 1991 is not a part of the administrative record before this Court for review and must be stricken.

### 2. *Product Codes*

■ Administrative reviews of outstanding antidumping duty orders are complex and time-consuming endeavors. In order to complete reviews in a timely fashion, the ITA requires the full cooperation of respondents. This is especially true in regard to the review at issue here where literally millions of sales of antifriction bearings were subject to review.

ITA has a responsibility to be specific in the information it asks for and in explaining the exact format in which that information is to be provided. In this case, the ITA asked for information "[d]escrib[ing] your product coding system as it applies to [antifriction bearings]. *Provide a key to your product codes, including all prefixes, suffixes, or other notation, which identify special features.*" AR Gen.Pub.Doc. 3 (emphasis added). In its questionnaire responses and in the computer tapes it submitted, Neuweg listed its product codes and included customer-specific information. As a result, the product codes for identical bearings sold in the U.S. and home markets were not the same.

ITA argues that Neuweg failed to provide the ITA with requested "information in the form required ..., *i.e.*, in a form which would permit the computer to match or compare United States and home market transactions, [therefore, the ITA] properly resorted to BIA for those sales which could not be matched." *Defendant's Memorandum in Opposition to Plaintiff's Motion for Judgment upon the Agency Record* ("*Defendant's Memorandum*") at 8–9.

Defendant-intervenors, Federal–Mogul Corporation ("Federal–Mogul") and The Torrington Company ("Torrington"), agree with the ITA. *Federal–Mogul Corporation's Opposition to Plaintiff's Motion for Judgment upon the Agency Record* ("*Federal–Mogul's Opposition*") at 3–8; *Opposition of Defendant–Intervenor, The Torrington Company, to Plaintiff's Motion for Judgment upon the Agency Record* ("*Torrington's Opposition*") at 7–8.

The administrative record contains no evidence that the ITA required that product code information for U.S. and home market sales of identical bearings be submitted in an identical form. The issue here is whether Neuweg provided the ITA with the information the ITA requested in a reasonable format when the ITA did not specify an explicit format.

This Court finds that Neuweg did provide the information requested, but that Neuweg's questionnaire responses were inadequate in not highlighting to the ITA that the product codes could be a potential problem and in not suggesting ways to correct it, especially in its sections B and C questionnaire responses. In other instances in its questionnaire responses, Neuweg did point out potential problems with its data and suggest ways to avoid them. *See* AR Germany Pub.Docs. 193, 239.

Also, it is significant that Neuweg now states that it is ready to provide the ITA with computer programming instructions which will easily rectify the product code problems. *Memorandum in Support of Plaintiff's Motion for Judgment upon the Agency Record* ("*Neuweg's Memorandum*") at 11. *Neuweg could have easily done this at the time it submitted its questionnaire responses.*

In addition, and even more important, it is clear from the record that Neuweg was put on notice of the ITA's problems matching sales by product codes at the disclosure conference soon after the publication of the Preliminary Results. AR Germany Pub. Doc. 542. At this point in this proceeding, the ITA did not have the time or the resources to devote to figuring out how to adjust Neuweg's product codes in order to

allow matching of all U.S. and home market sales. It was sufficient that the ITA notified Neuweg of the existence of the problem, at that point it was up to Neuweg to determine the cause and rectify it if possible. As pointed out above, Neuweg could easily have presented the ITA with computer programming instructions which would have resolved the problem.

■ Ultimately it is the respondent's responsibility to make sure that the ITA understands, and correctly uses, any information provided by the respondent. *See Asociacion Colombiana de Exportadores v. United States*, 13 CIT 13, 24, 704 F.Supp. 1114, 1124 (1989), *aff'd*, 901 F.2d 1089 (Fed. Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990) ("[P]arties must submit data promptly, and be very clear as to what the data indicates."). This is especially true here where the ITA pointed out the problem to the respondent at a disclosure conference. Neuweg failed to do anything about this problem until after the publication of the Final Results.

3. *Best Information Available*

■ As a result of its inability to match sales of identical bearings in the U.S. and home markets, the ITA tried to match sales of bearings within the same bearing family. However, since Neuweg had provided DIFMER data for only those bearings which it believed the ITA would be unable to match, the ITA was unable to make any transaction matches for a "significant" number of Neuweg's U.S. sales. As a result the ITA resorted to BIA.

19 U.S.C. § 1677e(c) (1988) provides that:

In making their determinations under this subtitle, the administering authority and the Commission shall, whenever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, use the best information otherwise available.

*See also* 19 C.F.R. § 353.37 (1991).

Since Neuweg's questionnaire responses were inadequate in not highlighting to the ITA potential problems with its questionnaire response information regarding product codes, was untimely in finally trying to explain the problem and assist the ITA in correcting it after it was pointed out to them, and also failed to provide needed DIFMER data for matching U.S. sales within bearing families, the ITA was justified in using BIA as the margin for Neuweg's unmatched U.S. sales.

■ When the ITA determines that the use of BIA is required, it is granted broad discretion in its choice of what to use as BIA. *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1190 n. 9 (Fed.Cir. 1990); *Chemical Prods. Corp. v. United States*, 10 CIT 626, 634, 645 F.Supp. 289, 295, *remand order vacated*, 10 CIT 819, 651 F.Supp. 1449 (1986). All that is required is that the ITA give a reasonable explanation of its choice.

Since Neuweg was not a participant, by its own decision, in the initial less than fair value investigation, it was subject to the "all others" rate of 68.89% in that investigation.

In the Final Determination at issue here the ITA explained that if the ITA was unable to match a significant portion of a respondent's U.S. sales with home market sales, the ITA would use "the higher of (1) the firm's previous rate (or "all others" rate) from the [less than fair value] investigation, or (2) the highest calculated rate for any firm in this review" for BIA as the margin for these unmatched sales. *Final Results*, 56 Fed.Reg. at 31,705. Under this rationale, the highest applicable BIA rate for Neuweg was the 68.89% "all others" rate from the initial investigation.

■ Neuweg contends that, given the circumstances of this case, the choice of the 68.89% "all others" rate as BIA was punitive. *Neuweg's Memorandum* at 15–20. The Court of Appeals for the Federal Circuit has stated that the use of the highest prior margin as BIA is not punitive, rather there is a presumption that it "is the most probative evidence of current margins." *Rhone Poulenc*, 899 F.2d at 1190.

This Court finds that the use of the 68.89% "all others" rate from the initial

investigation for the margin for Neuweg's unmatched U.S. sales was a reasoned exercise of the ITA's discretion in choosing what information to use as BIA.

### Conclusion

Since exhibit A of *Plaintiff's Reply* is not a part of the administrative record subject to review by this Court, the exhibit and all references to it in *Plaintiff's Reply* are ordered stricken. In addition, the Court finds that Neuweg's questionnaire responses were inadequate in not highlighting potential problems with its product codes and in presenting ways to avoid these problems, and was untimely in addressing this problem when it was brought to their attention by the ITA. As a result, the ITA was justified in resorting to the use of the 68.89% "all others" rate from the less than fair value investigation as BIA as the margin for Neuweg's unmatched U.S. sales.